USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 3/26/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------------X

MSP RECOVERY CLAIMS, SERIES LLC, a : 
Delaware entity, :
 :
                                    Plaintiff, :
 :                    20-CV-2102 (VEC)
            -against- :
 :                    OPINION AND ORDER
AIG PROPERTY CASUALTY COMPANY, a :
New York for-profit corporation, AIG PROPERTY :
CASUALTY, INC., a Delaware corporation, and :
LEXINGTON INSURANCE COMPANY, a :
Delaware company, :
 :
                                    Defendants. :

----------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

In a complaint long on invective and indignation but short on facts, Plaintiff, MSP

Recovery Claims Series, LLC, has sued AIG Property Casualty Company ("AIGPCC"), AIG

Property Casualty Inc. ("AIGPCI"), and Lexington Insurance Company to recover damages

pursuant to the Medicare Secondary Payer Act ("MSP Act"), 42 U.S.C. § 1395y. *See* First

Amended Complaint ("FAC"), Dkt. 55 ¶¶ 120–131. Plaintiff also alleges a direct right of

recovery for breach of contract pursuant to the MSP Act's implementing regulations, 42 C.F.R. §

411.24(e). FAC ¶¶ 133–138. Plaintiff couches its lawsuit as a putative class action. *Id.*

Defendants move to dismiss the FAC pursuant to Rule 12(b)(1) for lack of subject-matter

jurisdiction and pursuant to Rule 12(b)(6) for failure to state a claim. Dkt. 65. Defendants also

move to strike the class allegations pursuant to Rule 12(f) and Rule 23(d)(1)(D), Dkt. 22, and for

costs pursuant to Rule 41(d), Dkt. 24.[1] Because Plaintiff has not adequately alleged that it has

---

[1] On February 22, 2021, the Court stayed Defendants' motion for costs after the parties informed the Court
that they were conferring regarding possible resolution of that motion. Dkts. 63, 75.

standing, the Court lacks subject-matter jurisdiction over this action.  Accordingly, Defendants'
motion to dismiss is GRANTED.  Without subject-matter jurisdiction, the Court declines to
consider Defendants' remaining motions, and this matter is DISMISSED.

## BACKGROUND

The MSP Act prohibits Medicare from paying for "any item or service" if "payment has
been made, or can reasonably be expected to be made" by a "primary plan."  Primary plans
include group health plans, workers' compensation, automobile or liability insurance, or no-fault
insurance.  42 U.S.C. § 1395y(b)(2)(A).  But when the primary plan "has not made or cannot
reasonably be expected to make payment with respect to such item or service," Medicare can
make the necessary payment.  42 U.S.C. § 1395y(b)(2)(B)(i).  In such instances, the primary plan
"shall reimburse" Medicare "if it is demonstrated that such primary plan has or had a
responsibility to make payment with respect to such item or service."  42 U.S.C. §
1395y(b)(2)(B)(ii).  To help incentivize compliance, the MSP Act includes a private cause of
action for double damages when a primary plan fails to make required payments.  42 U.S.C. §
1395y(b)(3)(A).

Under this statutory scheme, primary plans are also required to pay Medicare Advantage
Organizations ("MAOs"), which are private insurers with whom Medicare sub-contracts to
provide services to Medicare patients.  *See MSPA Claims 1, LLC v. Tenet Fla., Inc.*, 918 F.3d
1312, 1316–17 (11th Cir. 2019) (describing the history of the MSP Act and MAOs); 42 U.S.C. §
1395w-22(a)(4) (applying the primary plan payment requirement to MAOs).

Plaintiff alleges that Defendants, which it asserts are all insurance companies that write
automobile and other liability insurance, "have systematically and uniformly failed to honor their
primary payer obligations . . .  by failing to pay for or reimburse medical expenses" resulting
from injuries sustained in accidents for which Defendants' policies are "primary plans."  FAC ¶

2

1.  Plaintiff alleges that a Defendant's obligation to pay is implicated (i) when someone it has insured under a no-fault insurance policy is a Medicare or MAO beneficiary, is injured in an automobile accident, and receives medical care for accident-related injuries; and (ii) when it enters into a settlement with a Medicare or MAO beneficiary on behalf of a tortfeasor whom it insures.  *Id.* ¶ 48.  Plaintiff brings a class action on behalf of all MAOs or their assignees that purportedly did not receive reimbursement from Defendants for the costs of medical care paid by the MAO in such circumstances.  *Id.* ¶ 117.

But Plaintiff itself is not an MAO; rather, "[n]umerous Assignors have assigned their recovery rights . . . to series LLCs of Plaintiff, which maintains the legal right to sue on behalf of each of its designated series LLCs."  *Id.* ¶ 40; *see also* Second Amendment of Limited Liability Company Agreement of MSP Recovery Claims, Series LLC, Dkt. 70-4 at 1 ("For avoidance of doubt, the Company is authorized to pursue or assert any claim or suit capable of being asserted by any designated series arising from, or by virtue of, an assignment to a designated series.").  Plaintiff brings this action on behalf of unnamed Series LLCs, which it alleges have been assigned certain recovery rights by MAOs.

While Plaintiff purports to bring claims with respect to all instances in which Defendants should have but did not pay its assignors, FAC ¶ 30, Plaintiff is not in possession of claims information for each such instance, Pl. Resp., Dkt. 70 at 12.  To fill that factual gap, Plaintiff instead offers two representative samples of such claims.  The first sample consists of claims arising from medical care provided to five "exemplar" patients, L.F., J.M., S.A., S.C., and J.F.[2]  Plaintiff alleges that four identified MAOs paid for medical items and services on behalf of these five patients at some point on or after the date on which an accident occurred, but the MAO

---

[2]         Plaintiff referred to the patients by their initials to protect their privacy.  Miranda Decl., Dkt. 70-1 ¶ 26.

never received reimbursement from the insurance company that purportedly had primary responsibility. FAC ¶¶ 50–99. Plaintiff alleges that L.F. was enrolled in an MAO plan issued by ConnectiCare, Inc. ("CONC"), that J.M. was enrolled in an MAO plan issued by Health First Health Plans, Inc. ("HFHP"), that S.A. was enrolled in an MAO plan issued by Avmed, Inc. ("AVDI"), and that both S.C. and J.F. were enrolled in MAO plans issued by Health Insurance Plan of Greater New York ("EHTH"). FAC ¶¶ 50, 60, 70, 80, 90. Plaintiff further alleges that CONC, HFHP, AVDI, and EHTH assigned the claims associated with these five patients to one of Plaintiff's Series LLCs, *id.* ¶ 40, n.6; and that L.F., J.M., and S.A. are Medicare beneficiaries who were covered by one of Defendants' no-fault insurance policies, FAC ¶¶ 51, 61, 71, while S.C. and J.F. are Medicare beneficiaries who entered into settlement agreements with one of the Defendants on behalf of tortfeasors whom the Defendant insured, *id.* ¶¶ 81, 86, 91, 96. Plaintiff contends that these five exemplars "illustrate Defendants' systematic and uniform failure to: (i) fulfill their statutory duties as a 'no-fault' insurer; and (ii) fulfill their statutory duties when entering into settlements." *id.* ¶ 48.

The second sample of claims allegedly includes "numerous instances where Defendants admitted, by reporting to [the Center for Medicare & Medicaid Services ("CMS")], that they were contractually obligated (pursuant to no-fault insurance policies) to provide primary payment." *id.* ¶ 28. These instances are listed in Exhibit A to the FAC, a thirteen-page spreadsheet that allegedly includes "Medicare beneficiaries who were enrolled with Plaintiff's assignors at the time of the accidents in question" and "where its assignors made accident-related conditional payments subject to recovery in this suit." Pl. Resp. at 5; *see also* FAC Ex. A. The information provided about each "instance" listed in Exhibit A is much less detailed than the conclusory information provided about each of the five "exemplars." *Compare* FAC Ex. A (listing each instance) *with* FAC ¶¶ 50–99 (describing the five exemplar claims).

Plaintiff argues that it has standing to assert the claims for reimbursement associated with the five exemplars, the claims listed on Exhibit A, and a "greater universe" of cases that fall within Defendants' obligation to pay under the MSP Act.  FAC ¶ 31.

## DISCUSSION

### I.     Legal Standard

When a defendant moves to dismiss under Rule 12(b)(1) for lack of subject-matter jurisdiction, and moves to dismiss on other grounds, the Court must generally consider the Rule 12(b)(1) motion first.  *Rhulen Agency, Inc. v. Ala. Ins. Guar. Ass'n*, 896 F.2d 674, 678 (2d Cir. 1990).  "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it."  *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).

Pursuant to Article III of the Constitution, federal courts may only hear "cases" and "controversies."  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 576 (1992).  To ensure the presence of a case or controversy, the Court must make a threshold determination whether the plaintiff has standing to sue.  *Id.* at 560–61.  To have standing, a plaintiff must adequately allege: (1) a concrete, particularized, actual, or imminent injury-in-fact; (2) a causal connection between the injury and the conduct complained of such that the injury is "fairly traceable to the challenged action of the defendant;" and (3) it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision from the Court.  *Id.* (internal quotation marks omitted).  If a plaintiff lacks standing, the claim must be dismissed for lack of subject-matter jurisdiction.  *Cent. States SE & SW Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005).

"The party invoking jurisdiction bears the burden of establishing that jurisdiction exists."  *Buday v. New York Yankees P'ship*, 486 F. App'x 894, 895 (2d Cir. 2012) (internal citation

omitted).  In deciding a motion to dismiss for lack of subject-matter jurisdiction, the court "must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the plaintiff's favor." *Conyers v. Rossides*, 558 F.3d 137, 143 (2d Cir. 2009) (quotation omitted). "However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn." *Atl. Mut. Ins. Co. v. Balfour Maclaine Int'l Ltd.*, 968 F.2d 196, 198 (2d Cir. 1992); *see also Conyers,* 558 F.3d at 143 ("[E]ven on a motion to dismiss, courts are not bound to accept as true a legal conclusion couched as a factual allegation.") (internal quotation marks omitted).

Courts recognize two types of Rule 12(b)(1) motions, facial and factual, and Defendants have made both types of motions here.[3]  "When the Rule 12(b)(1) motion is facial, *i.e.*, based solely on the allegations of the complaint or the complaint and exhibits attached to it (collectively the "Pleading"), the plaintiff has no evidentiary burden.  The task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue." *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (cleaned up).  On the other hand, when the challenge is fact-based, defendants may proffer evidence beyond the Pleading, and the plaintiff may come forward with its own evidence to controvert that evidence. *Id.* at 57.  In such instances, "the district court will need to make findings of fact in aid of its decision as to standing." *Id.*

---

[3]  A careful review of Defendants' 12(b)(1) arguments reveals that its jurisdictional challenges are mostly fact-based, except for its argument that Plaintiff lacks the right to pursue claims on behalf of its Series LLCs. *See* Pl. Resp., Dkt. 70 at 14–16.  With respect to the right to sue, Defendants claim that, as a matter of law, Plaintiff cannot pursue claims that have been assigned to its Series LLC. *Id.* at 14.  Accordingly, the Court finds that aspect of Defendants' motion to be a facial challenge.

II.    **Plaintiff Lacks Standing Over Its Five Exemplar Claims**

A.  **Plaintiff Has Not Adequately Pled Injury**

To satisfy the first element of standing, Plaintiff must have suffered an injury-in-fact.

*Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) *as revised* (May 24, 2016).  The injury must

be "concrete and particularized" and "actual or imminent, not conjectural or hypothetical."

*Lujan*, 504 U.S. at 560.  To be "particularized," the injury "must affect the plaintiff in a personal

and individual way."  *Id.* at 561, n.1.  At the pleading stage, "general factual allegations of injury

resulting from the defendant's conduct may suffice."  *Id.* at 561.  Injury-in-fact must be "clearly

alleged," which is a "lower threshold" that that for sustaining a cause of action.  *Harry v. Total*

*Gas & Power N. Am.*, 889 F.3d 104, 110 (2d Cir. 2018).  Nevertheless, the factual allegations

must be sufficient to put injury-in-fact into the realm of the plausible.

With respect to the five exemplar claims, Plaintiff describes its injury-in-fact as the

economic losses resulting from a primary plan's failure to reimburse the MAOs for accident-

related medical expenses paid on behalf of the MAOs' enrollees and as to which a plan has

primary responsibility.  Pl. Resp. at 4–5; FAC ¶¶ 22, 43, 102, 129.  Because the injury must be

particularized, to plead adequately injury-in-fact, Plaintiff must show that it was injured.  *Lujan*,

504 U.S. at 561.  Plaintiff alleges that it is linked to the MAOs' alleged injuries by virtue of its

assignments.  With respect to the exemplar claims, Plaintiff contends that each MAO assigned its

claim for reimbursement to a Series LLC of Plaintiff and that, pursuant to Plaintiff's own

Limited Liability Company Agreement, Plaintiff has the right to sue on behalf of each of its

Series LLCs.  FAC ¶¶ 40, 108.

Accordingly, to show injury-in-fact with respect to each of the five exemplar claims,

Plaintiff must make adequate factual allegations to support a finding that (1) each MAO incurred

medical expenses as a result of an accident suffered by the respective exemplar patient; (2) each

MAO paid, but did not receive reimbursement, for those expenses; (3) each MAO assigned its claim for reimbursement to a Series LLC of Plaintiff; and (4) Plaintiff has the right to sue on behalf of the designated Series LLC that received the assignment.[4]  For the reasons discussed below, the Court finds that Plaintiff has adequately alleged the first prong and the Court will presume, for the purpose of the motion only, that Plaintiff has adequately alleged the fourth prong.  But the Court finds that Plaintiff has not adequately alleged the second prong as to any of the five exemplar patients and it has not adequately alleged the third prong as to three of the five exemplar patients.  Because injury-in-fact requires Plaintiff to allege each of the four elements, and because Plaintiff has not adequately alleged each link in the chain, Plaintiff is unable to "nudge its alleged injury from one that is conceivable to one that is plausible."  *Amidax Trading Grp. v. S.W.I.F.T. SCRL*, 671 F.3d 140, 146 (2d Cir. 2011).  The Court will consider each of these prongs in turn.

### 1. Whether the Four MAOs Incurred Medical Expenses as a Result of Accidents Suffered by the Five Exemplar Patients

Although a close call, Plaintiff has adequately alleged that the four MAOs incurred medical expenses as a result of accidents suffered by the five exemplar patients.[5]  For each

---

[4]     Although not articulated in quite this manner, other courts have similarly described Plaintiff's injury in other cases brought by Plaintiff or its affiliated entities against different insurance companies.  *See, e.g.*, *MSP Recovery Claims, Series LLC v. Grange Ins. Co.*, No. 19-CV-219, 2019 WL 6770729, at *6, *16 (N.D. Ohio Dec. 12, 2019) (finding that Plaintiff must "allege facts demonstrating that the MAOs incurred reimbursable costs and were not reimbursed" and evaluating the validity of the assignments as part of the jurisdictional inquiry) (internal quotation marks omitted); *MSP Recovery Claims, Series LLC. v. Progressive Corp.*, No. 18-CV-2273, 2019 WL 5448356, at *10–13 (N.D. Ohio Sept. 17, 2019) (same); *MAO-MSO Recovery II, LLC v. Gov't Emps. Ins. Co.*, No. 17-CV-711, 2018 WL 999920, at *6–7 (D. Md. Feb. 21, 2018) (describing the injury-in-fact as incurred costs without reimbursement and recognizing that plaintiffs must also make allegations of proper assignment to support jurisdiction).

[5]     Plaintiff alleges that each exemplar patient was injured "in an accident" but never alleges what type of accident (*e.g.*, automobile, slip-and-fall, bicycle, hunting, skiing).  The Court presumes that the patients were injured in vehicular accidents based on Plaintiff's focus on no-fault insurance, but the total lack of detail about what happened to each of the five exemplar patients leaves the court only with the assumption that the accident could implicate insurance.

exemplar patient, Plaintiff alleges that he or she was injured in an accident and that as "a direct
and proximate result of the accident," the claimant "sustained injuries that required medical
items and services."  FAC ¶¶ 51–52, 61–62, 71–72, 81–82, 91–92.  As proof that medical items
and services were provided, Plaintiff included spreadsheets attached as exhibits to the FAC that
purport to list the diagnosis codes associated with the medical care allegedly provided to each
patient.  *See* FAC Exs. B, D, F, H, J.  Those spreadsheets list dates on which medical services
were allegedly provided and the dates on which the charges for the services were allegedly paid
by the MAO.  *Id.*

In a declaration attached to its opposition brief,[6] Plaintiff's data analyst explained that the
data presented in these exhibits comes "from Medicare Advantage plans that have assigned their
claims to MSP Recovery, primary payers and/or health care providers from which MSP
Recovery has made records requests, and other third parties and/or health information handlers
that aggregate and compile the data contained herein."  Miranda Decl., Dkt. 70-1 ¶ 7.  Plaintiff
uses a "proprietary system" to "capture, compile, synthesize, and funnel large amounts of data,"
FAC ¶ 23, and to "match[] the health care claims data from its Assignors to the publicly
available reporting data from CMS and police crash reports available in limited jurisdictions."
*See* FAC ¶ 10; *see also* FAC ¶¶ 26, 30.  It appears that the information about each of the five
exemplar patients presented in the exhibits is a result of this data matching and analytic process.

But the spreadsheets do not include fields for the name of the patient who received
treatment or the name of the MAO that allegedly paid for the services.[7]  This lack of identifying

---

[6]     Because Defendants have made fact-based challenges contesting whether the four MAOs incurred medical
expenses as a result of accidents suffered by the five exemplar patients, *see, e.g.*, Def. Mem. of Law, Dkt. 65 at 10,
the Court may consider filings outside the Pleadings, like Plaintiff's expert declaration.  *See Carter v. HealthPort
Techs., LLC*, 822 F.3d 47, 57 (2d Cir. 2016).

[7]     This contrasts to other spreadsheets prepared and submitted by Plaintiff that have columns with member
names and ID numbers, that, although filed in redacted form, do seem to link the data to particular patients (although

information appears to have caused Plaintiff to confuse its own data and to link two patients to an MAO with which the patient has no relationship.  *Compare* FAC ¶ 50 (alleging that L.F. was enrolled in CONC) *with* Miranda Decl. ¶ 20 (linking L.F. to HFHP); *compare* FAC ¶ 60 (alleging that J.M. was enrolled in HFHP) *with* Miranda Decl. ¶ 21 (linking J.M. to CONC); *see also MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, No. 19-CV-211, 2019 WL 4222654, at *5 (N.D.N.Y. Sept. 5, 2019) (finding it problematic that "nothing on the actual exhibit confirms its source").

Putting aside the blunders just noted, the Court has further reason to distrust Plaintiff's data compilation and analytic processes.  The data expert's analysis is riddled with basic errors, including misreading Plaintiff's own exhibits.  *Compare* Miranda Decl. ¶ 20 (asserting that the medical care provided to L.F. ended on September 23, 2015) *with* FAC Ex. B (including September 24, 2015 and October 23, 2015 as dates of medical care rendered); *compare* Miranda Decl. ¶ 23 (asserting that the MAOs made payments for J.F.'s medical care between September 15, 2017, and January 9, 2017) *with* FAC Ex. J (listing six payments made on September 6, 2017).

Given these discrepancies, the Court questions whether the information provided by Plaintiff in fact supports its contention that the four MAOs incurred medical expenses as a result of accidents suffered by the five exemplar patients.  "Although factual allegations of a complaint are normally accepted as true on a motion to dismiss, that principle does not apply to general allegations that are contradicted by more specific allegations . . . . " *DPWN Holdings (USA), Inc. v. United Air Lines, Inc.*, 747 F.3d 145, 151–52 (2d Cir. 2014).  Given the contradictions

---

not to particular MAOs).  *Compare* FAC, Dkt. 55 Exs. A, C, E, G, I, K (including redacted columns allegedly listing "Msp Member Id," "Msp Memb Full Name," and "Member Id") *with* FAC Exs. B, D, F, H, J (lacking any identifying information).

between the expert declaration and the FAC, the Court does not have to accept Plaintiff's

inconsistent allegations as true.  But despite these issues, which reflect unacceptable sloppiness

on the part of Plaintiff's attorney,[8] when Plaintiff's evidence is evaluated without the problematic

allegations, the Court can still find that Plaintiff has adequately, but barely, alleged that the four

MAOs paid for medical care provided to the five exemplar patients.

### 2.   Whether the MAO Paid for Services and Was Not  Reimbursed by the Primary Insurer

To allege injury-in-fact, Plaintiff must allege that the MAOs lost money, which Plaintiff

acknowledges requires adequate factual allegations showing that the MAOs "incurred

reimbursable costs and were not reimbursed."  *See* Pl. Resp. at 4 (citing *MSP Recovery Claims,*

*Series LLC v. Grange Ins. Co.*, No. 19-CV-219, 2019 WL 6770729, at *16 (N.D. Ohio Dec. 12,

2019)).  Plaintiff contends that the costs in question are "reimbursable" because allegedly

associated claims were reported to CMS.[9]  Pl. Resp. at 1, 5–6.  To support this contention,

Plaintiff explains that insurance companies are statutorily obligated to report "their primary

payer responsibility to CMS," *see* FAC ¶ 6, and that such reports, according to Plaintiff,

constitute an "admission" by the companies that they are legally obligated to reimburse the MAO

for its costs, *id.* ¶ 28.

But as Defendants point out,[10] Plaintiff's underlying premise — if a claim is reported to

CMS, then any medical expense that may be associated with the claim is reimbursable by the

---

[8]      Plaintiff has no excuse for such sloppiness, and this is not the first time that it has been admonished for these sorts of errors.  *See MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, No. 19-CV-211, 2019 WL 4222654, at *5 (N.D.N.Y. Sept. 5, 2019) (noting that "the Court is faced with a messy Complaint, improper exhibits, and Plaintiffs' inconsistent arguments").

[9]      Plaintiff obtained the CMS reporting data from a third-party vendor.  FAC ¶ 57, n.7.

[10]      Defendants make this point as part of their Rule 12(b)(6) motion.  Def. Mem. of Law at 21–22.  But these arguments are also relevant to the Court's consideration of whether Plaintiff has standing.  Moreover, it is of no moment that Defendants did not raise these issues in the standing context; the Court may raise any standing issue on its own initiative at any stage of the litigation.  *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506 (2006).

entity that reported the claim — is factually inaccurate.[11]  Anytime an insurance company becomes aware that a Medicare beneficiary was injured in an accident for which it (or a direct subsidiary) wrote a policy that may provide coverage, the insurance company is obligated to report it to CMS.  Insurance companies are required to submit such claim information "regardless of whether or not there is a determination or admission of liability."  42 U.S.C. § 1395y(b)(8)(C); Def. Mem. of Law at 22.  Defendants give several examples of claims that were reported to CMS but the costs of the medical services associated with the claims were properly incurred by the MAO and were not reimbursable by the primary payer.  *See* Def. Mem. of Law at 22, n.31.  While Plaintiff fails to address this point in its response brief, as Defendants point out, Plaintiff's expert in other litigation rightly recognized that insurance companies are required to report when the "injured party is/was a Medicare beneficiary" and is required to do so "regardless of whether or not there is an admission or determination of liability."  Def. Mem. of Law at 22, n.30 (citing Expert Report of Michael F. Arrigo at 26, *MSP Recovery v. Tower Hill*, No. 18-CV-157 (N.D. Fla. May 26, 2020), ECF No. 67-2).

With no allegations on the subject by Plaintiff, the Court has no way to assess the likely overlap between the claims reported to CMS and medical expenses incurred by insureds involved in those accidents that are ultimately reimbursable by the primary payer.[12]  In *Amidax*

---

[11]     In evaluating whether this Plaintiff had adequately stated a claim that other insurance companies had violated the MSP Act, the Eleventh Circuit found that insurance companies' reports to CMS were evidence "that they owed primary payments, including the primary payments for which Plaintiffs seek reimbursement."  *MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020).  This Court declines to follow that holding because the Eleventh Circuit neither acknowledged nor addressed Defendants' argument here — "primary payers must report to CMS regardless of whether there was a conditional payment and regardless of whether or not there is an admission or determination of responsibility."  Def. Mem. of Law at 22, n.30.

[12]     With the high number of pre-existing conditions in the Medicare population, the Court can speculate that a considerable amount of medical expenses incurred by patients involved in accidents that are reported to CMS may ultimately not be related to the accident at issue and are, accordingly, not reimbursable.  With no information from Plaintiff on this issue, the Court draws no inference either way.

*Trading Group v. S.W.I.F.T. SCRL*, the Second Circuit considered whether a company had properly alleged that it suffered an injury when the government unlawfully obtained financial information from SWIFT, a messaging service used to route transactions between financial institutions.  671 F.3d at 143.  Because the plaintiff had not alleged that the entire SWIFT database was provided to the government, the Second Circuit found that "to determine if a plausible injury in fact exists [the court] need[s] to know if Amidax's customers so frequently utilized the SWIFT network to transfer funds that it is plausible, not just possible, that Amidax's data was handed over."  *Id.* at 148.  Here too the Court needs to know whether CMS data plausibly suggests that reported claims generate medical expenses that are reimbursable to the MAOs by the reporting entity.  Without any information from Plaintiff about what can be discerned from CMS data,[13] the Court is at a loss whether this information supports Plaintiff's premise that the exemplar claims involve costs that should have been reimbursed to the MAOs.  In short, the Court recognizes that many of the claims reported to CMS may involve accidents where an insurance company is the primary payer and therefore owes reimbursement to the MAO, but Plaintiff has not adequately alleged that that there is "more than a sheer possibility," *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009), that its exemplar claims fall into that category.

While the standard for alleging standing is lower than for stating a claim, speculation is not enough to get to the realm of the possible.  Without more, Plaintiff has not alleged that the MAOs' injury was "actual" and not "conjectural or hypothetical."  *Lujan*, 504 U.S. at 560.[14]

---

[13]    Instead of arguing that CMS data reflects some claims that are likely reimbursable, Plaintiff has argued instead only that a company's report to CMS constitutes an admission that it is the primary payer.  Without any response to Defendants' contention that CMS reporting does not do the work Plaintiff alleges, the Court has nothing on which to base a decision that it can draw reasonable inferences from the bare fact that the claim was reported.

[14]    The Court agrees that Plaintiff is not required to "plead detailed facts showing that the MAO was entitled to reimbursement under the MSP" in order to allege standing.  *See Grange Ins. Co.*, 2019 WL 6770729, at *16.  Such a showing would be akin to requiring Plaintiff to demonstrate that it has met each element of its claim for relief, an issue that the Court should properly consider on the merits.  But requiring Plaintiff to allege adequate facts from

Without any factual support for the conclusion that the costs at issue were related to the accidents and should have been reimbursed but were not, Plaintiff is left with nothing more than speculation that the MAOs at issue lost money.

Because Plaintiff has not adequately alleged that the MAOs incurred reimbursable costs in connection with the exemplar claims, Plaintiff has not adequately pled injury-in-fact. Although this finding warrants dismissal of the FAC in its entirety for lack of standing, the Court further considers Plaintiff's standing allegations, which only reaffirm that the case should be dismissed on this basis.

### 3.   Whether the MAOs Assigned the Exemplar Claims to Series LLCs of Plaintiff

Plaintiff contends that each of the four MAOs assigned its respective claims related to treatment of the exemplar patients to a Series LLC associated with Plaintiff.  FAC ¶¶ 40, 48.  An "assignee of a claim has standing to assert the injury-in-fact suffered by the assignor," *Vt. Agency of Nat. Res. v. United States ex rel. Stevens*, 529 U.S. 765, 773 (2000), and the assignee "replaces the assignor with respect to the claim or the portion of the claim assigned, and thus stands in the assignor's stead with respect to both injury and remedy."  *Connecticut v. Physicians Health Servs. of Conn., Inc.*, 287 F.3d 110, 117 (2d Cir. 2002).  Upon careful review of the assignments at issue, the Court finds that reimbursement claims associated with medical care provided to J.F. and S.A. have not been fully assigned to one of Plaintiff's Series LLCs and that Plaintiff has not adequately alleged that the MAOs claims for reimbursement associated with any of the medical care provided to S.A. and J.M. have been assigned away from the MAO.

Plaintiff filed the relevant assignment agreements between various of its Series LLCs and the four MAOs as exhibits to the FAC.  *See* FAC Exs. L–S.  Each agreement limits the

which the Court can infer that the MAOs plausibly incurred reimbursable costs is a far cry from requiring Plaintiffs to prove that the MSP Act was violated.

assignment to claims that arose during a certain time period.  Plaintiff alleges that "the claims at issue fall squarely within the assignments' temporal boundaries."  Pl. Resp. at 6–7; *see also* FAC ¶¶ 42, 101.  But upon close review, that is simply not correct.  Plaintiff has not adequately alleged that it has been fully assigned the claims for reimbursement for medical care provided to S.A. and J.F. because a large portion of that medical care fell outside the time periods delineated in the respective assignment agreements.[15]

With respect to S.A., AVDI, the assignor, assigned all claims for reimbursement that existed on August 16, 2019, the date of the agreement.  FAC Ex. S at 2; *see also* Miranda Decl. ¶ 24 (referencing that the assignment covers all Medicare recovery claims existing on August 16, 2019).[16]  But Plaintiff's data analyst states that AVDI paid for medical services provided to S.A. between June 24, 2019 and December 16, 2019.  FAC Ex. F.  Out of the eight items and services for which dates paid are provided, four of the payments were made after August 16, 2019.  *Id.* Put another way, half of the claims for medical care provided to S.A. and paid by AVDI clearly fall outside of the temporal scope of AVDI's assignment to Plaintiff's Series LLC.  Without a valid assignment, Plaintiff clearly lacks standing to sue for reimbursement for 50% of S.A.'s claims.

With respect to J.F., EHTH, the assignor, assigned claims for medical care "that were rendered and paid for by Assignor during the six (6) year period beginning September 29, 2011 and ending September 29, 2017."  FAC Ex. P at 1.  But Plaintiff provides data that show that

---

[15] With respect to medical care provided to L.F., J.M., and S.C., the Court finds that Plaintiff's claims for reimbursement are associated with the costs of care that was provided and paid for within the temporal restrictions in the respective assignment agreements.  *Compare* FAC Exs. B, D, H *with* FAC Exs. L, N, P.

[16] The Court finds it baffling that in a single paragraph, Plaintiff's data analyst asserts that the assignment covers claims existing on August 16, 2019, and that payments were made for S.A.'s care through December 16, 2019.  Miranda Decl., Dkt. 70-1 ¶ 24.  Despite presenting this discrepancy, the declaration does nothing to explain or even address it.

medical services were provided to J.F. between August 22, 2017 and December 5, 2017, and

those services were paid by EHTF between September 6, 2017 and January 9, 2018.  FAC Ex. J.

Of the 60 medical items or services listed in Exhibit J to the FAC, only 13 of them were both

rendered to J.F. and paid by EHTH during the period covered by the assignment agreement.[17]

Accordingly, 78% of the claims relating to medical care provided to J.F. are outside the scope of

the assignment; Plaintiff clearly lacks standing to sue for reimbursement of those costs.

Each of the four assignment agreements also exclude particular types of claims from the

assignment.  *See* FAC Ex. L at 1 (excluding claims that "are being pursued by other recovery

members");  FAC Ex. N at 1 (excluding "any existing subrogation cases that have been

commenced by [the MAO] or cases where [the MAO's] members have already filed lawsuits

against a primary payer"); FAC Ex. R at 14, FAC Ex. S at 2 (excluding claims relating to the

GlaxoSmithKline manufacturing facility in Cidra, Puerto Rico); FAC Ex. P at 1 (excluding

claims that "have been assigned to and/or are being pursued by other recovery vendors,

including, but not limited to, The Rawlings Group").

Plaintiff alleges that the exemplar claims "are not subject to any carveouts, exclusions, or

any other limitations in law or equity that would impair Plaintiff's right to bring this cause of

action."  FAC ¶¶ 42, 101 (using the same text in both paragraphs).  To support that conclusory

allegation, Plaintiff's data analyst asserts that the assignors provided Plaintiff's affiliated entities

with "lists of those claims that are carved-out and which the MSP Recovery entities cannot

pursue" and that "MSP Recovery routinely reviews these carve-out lists prior to Plaintiff

pursuing recovery claims."  Miranda Decl. ¶ 10.

---

[17]     The Court is similarly baffled by Plaintiff's data analyst's failure to explain this discrepancy.  In his
declaration, the analyst notes that the assignment covers the period of September 29, 2011, through September 29,
2017, Miranda Decl. ¶ 22, and that claims arise for medical care provided to J.F. between August 22, 2017, and
December 5, 2017, and from payments made by EHTH between September 15, 2017 and January 9, 2018, for that
care, *id.* ¶ 23.  Here too the declaration does nothing to rectify or explain this discrepancy.

With respect to L.F., S.C., and J.F., who were enrolled in plans provided by CONC and EHTH, the data analyst states that he "conducted an independent and manual review of the EHTH/ConnectiCare carve-out lists and did not find any of L.F., S.C., or J.F.'s claims on those lists." *Id.* ¶ 15.  He also describes the carveout lists provided by EmblemHealth, the parent company of EHTH and CONC.  *Id.* ¶¶ 12, 13 (asserting that the EHTH and CONC carveout lists are found on five excel spreadsheets).  Given the issues described *supra* with respect to the data analyst's ability to accurately read his own data, the Court has reason to doubt whether his "independent and manual" review yielded accurate results.  But given that the Court must draw reasonable inferences in Plaintiff's favor, the Court concludes that L.F., S.C., and J.F.'s claims were not excluded from the assignment.

But the Court cannot draw the same inferences with respect to claims relating to medical care provided to J.M. and S.A.  The FAC alleges that J.M. was enrolled in a plan issued by HFHP.  FAC ¶ 60.  But the data analyst appears to assert that J.M. was enrolled in a plan issued by CONC and that L.F. was enrolled in a plan issued by HFHP.  Miranda Decl. ¶¶ 20–21.  While the data analyst asserts that the HFHP claims at issue were not subject to the carveouts contained in the HFHP assignment agreement, *id.* ¶ 18, the Court has no way of knowing whether Plaintiff compared claims related to J.M. or L.F. to the carveout lists provided by HFHP.  Accordingly, the Court is unable to draw a reasonable inference that J.M.'s claims were not excluded from the assignment at issue.[18]

With respect to S.A., the FAC alleges that he or she was enrolled in a plan issued by AVDI.  FAC ¶ 70.  But the specific carveout in AVDI's assignment agreements — it excludes

---

[18]      In addition to the problem of the analyst confusing J.M. and L.F., the HFHP assignment carves out claims where the MAO member has already filed a lawsuit against the primary payer.  FAC Ex. N at 1.  Plaintiff makes no effort to explain how it has confirmed that J.M. has not commenced a lawsuit against the primary payer.

claims relating to the GlaxoSmithKline manufacturing facility in Cidra, Puerto Rico, *see* FAC Ex. R at 14; FAC Ex. S at 2 — is not mentioned anywhere in the data analyst's declaration or in Plaintiff's other filings.[19]  The data analyst asserts that AVDI has transferred the rights to recover payments that relate to assigned claims and that such claims encompass all claims existing on June 26, 2019.  Miranda Decl. ¶ 17.  Plaintiff's failure to allege, other than in an entirely conclusory way, that the claim related to medical care provided to S.A. is not subject to the specific carveout provision in the assignment agreement "is fatal to Plaintiff's standing argument." *MSP Recovery Claims, Series LLC v. Tech. Ins. Co., Inc.*, No. 18-CV-8036, 2020 WL 91540, at *4 (S.D.N.Y. Jan. 8, 2020); *see also New York Cent. Mut. Fire Ins. Co.*, 2019 WL 4222654, at *5.  Accordingly, Plaintiff has not adequately alleged that its Series LLC was assigned claims related to unreimbursed medical care provided to S.A.

In short, 50% of claims related to S.A.'s medical care and 78% of claims related to J.F.'s medical care were not assigned to a Series LLC because, according to Plaintiff's own data, that medical care occurred outside the time period covered by the respective assignment agreements.[20]  Putting aside the timing problem, Plaintiff has not adequately alleged that any of the claims relating to medical care provided to J.M. and S.A. were assigned because it failed to allege in a non-conclusory fashion that the claims were not subject to carveout provisions in the assignment agreements.

---

[19]     It is also not mentioned in the FAC or in Appendix 2 to the FAC.

[20]     While this does mean that 50% of claims related to S.A. and 22% of claims related to J.F. fall within the temporal scope of the assignment agreements, on its own, that is insufficient to confer standing.  As described *supra*, Plaintiff improperly relies on CMS data to allege that the costs the MAOs allegedly paid for these claims were reimbursable by the primary insurers.  And as described *infra*, Plaintiff presents no evidence to controvert Defendants' declaration that the Defendant Plaintiff alleges is the primary payer with respect to medical care provided to S.A. and J.F. neither writes nor issues insurance policies.

### 4. Whether Plaintiff Has the Right to Sue on Behalf of the Designated Series LLCs

Plaintiff acknowledges that it does not hold any MAO assignments; instead, various

Series LLCs associated with Plaintiff entered into assignment agreements with the various

MAOs.  FAC ¶ 40.[21]  To allege an injury that is particularized, Plaintiff must allege a connection

between Plaintiff and the designated Series LLC to which a claim was assigned.  Plaintiff alleges

that it "maintains the legal right to sue on behalf of each of its designated series LLCs," *id.* ¶ 40,

because Plaintiff's Limited Liability Company Agreement authorizes it "to pursue or assert any

claim or suit capable of being asserted by any designated series arising from, or by virtue of, an

assignment to a designated series," *id.* (quoting Second Amendment of Limited Liability

Company Agreement of MSP Recovery Claims, Series LLC, Dkt. 70-4 at 1).[22]

Defendants argue that it is of no moment that Plaintiff's own LLC Agreement authorizes

it to sue because Delaware law "provides that an individual series of a series LLC is a separate

legal entity that has 'the power and capacity to, in its own name, contract, hold title to assets . . .

and sue and be sued.'"  Def. Mem. of Law at 14 (citing Del. Code Ann. tit. 6, § 18-215(b)(1);

*Hartsel v. Vanguard Grp.*, 2011 WL 2421003, at *18 (Del. Ch. June 15, 2011), *aff'd*, 38 A.3d

1254 (Del. 2012)).  Defendants argue that Plaintiff unlawfully "disregard[ed] the maintenance of

corporate form" by crafting such an operating agreement.  Def. Mem. of Law at 15.  At least two

courts in other MSP Act litigation have agreed with Defendants' position.  *See New York Cent.*

*Mut. Fire Ins. Co.*, 2019 WL 4222654, at *6; *MSP Recovery Claims, Series LLC v. USAA Gen.*

*Indem. Co.*, No. 18-CV-21626, 2018 WL 5112998, at *12 (S.D. Fla. Oct. 19, 2018).

---

[21]     CONC and EHTH initially assigned their claims to a designated Series LLC and to MSP Recovery, LLC, another Plaintiff-affiliated entity.  FAC Exs. L, P.  MSP Recovery, LLC, then assigned its claims to the designated Series LLC.  FAC Exs. M, Q.  HFHP initially assigned its claims to MSP Recovery, LLC, FAC Ex. N, which, in turn, assigned the claims to Plaintiff's designated Series LLC, FAC Ex. O.  AVDI directly assigned its claims to Plaintiff's designated Series LLC.  FAC Exs. R, S.

[22]     Plaintiff does not explain in the FAC or in its brief why the Series LLCs did not sue on their own behalf.

Plaintiff argues that authorizing the right to sue in this manner is valid because, pursuant to Delaware law, "the relationship between protected series interests and their master Series LLC is dictated by the terms of the relevant limited liability company agreement." Pl. Resp. at 15 (quoting Del. Code Ann. tit. 6, § 18-215(b)(1) ("[A] protected series shall have the power and capacity to, in its own name . . . sue and be sued," except as "otherwise provided in a limited liability company agreement.")).  Because the LLC Agreement at issue authorizes Plaintiff to sue on behalf of its designated Series LLCs, Plaintiff contends that there is no abuse of corporate form.  At least three courts in other Plaintiff-initiated litigation have agreed with Plaintiff's position. *See MSP Recovery Claims, Series LLC v. ACE Am. Ins. Co.*, 974 F.3d 1305, 1319–20 (11th Cir. 2020); *MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Co.*, No. 19-CV-524, 2020 WL 8675835, at *8 (W.D.N.Y. Nov. 20, 2020), *report and recommendation adopted sub nom. MSP Recovery Claims, Series LLC v. Merchants Mut. Ins. Corp.*, No. 19-CV-524, 2021 WL 784537 (W.D.N.Y. Mar. 1, 2021); *MSP Recovery Claims, Series LLC v. Farmers Ins. Ex.*, No. 17-CV-2559, 2018 WL 5086623, at *13–14 (C.D. Cal. 2018).

The Court has grave doubts about the merits of Plaintiff's argument, but because Plaintiff has not alleged standing for a number of other distinct reasons, and because there is a split of federal court authority over this thorny Delaware state law issue, the Court declines to make any findings on the matter.  For the purpose of this motion only, the Court will assume that Plaintiff has the right to sue on behalf of its designated Series LLCs.

### B.  Plaintiff Has Not Adequately Pled Causation

The causation element of Article III standing requires an alleged injury to be "fairly traceable" to the defendant. *Rothstein v. UBS AG*, 708 F.3d 82, 91 (2d Cir. 2013) (citation omitted).  That is, Plaintiff must allege facts adequate to show that the alleged injury resulted from the actions of the defendant and "not . . . from the independent action of some third party."

*See MGM Resorts Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 44 (2d Cir. 2017);

*Holland v. JPMorgan Chase Bank, N.A.*, No. 19-CV-233, 2019 WL 4054834, at *6 (S.D.N.Y.

Aug. 28, 2019) ("A plaintiff proceeding against multiple defendants must establish standing as to

each defendant and each claim.") (citing *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 65–66 (2d

Cir. 2012)).  Because Plaintiff has not adequately alleged that any of the injury-in-fact suffered

by any of the four MAOs with respect to any of the five exemplar claims is fairly traceable to

any of the three Defendants in this action, it has not adequately pled causation.

### 1. Plaintiff Has Not Adequately Pled that any Defendant Issued the Insurance Policy at Issue in Four of the Five Exemplar Claims

Plaintiff has not adequately pled that the injury to the MAOs from incurring

unreimbursed medical expenses in connection with the medical care of J.M., S.A., J.F., and L.F.

is traceable to Defendants.  Plaintiff alleges that J.M. and S.A. were covered by no-fault

insurance policies issued by Defendant AIGPCI and that L.F. was covered by a no-fault policy

issued by Defendant AIGPCC.  FAC ¶¶ 51, 61, 71.  Plaintiff further alleges that the tortfeasor

responsible for J.F.'s accident was insured by AIGPCI.  *Id.* ¶ 81.  As a factual challenge to

Plaintiff's standing claims, Defendants submitted two declarations.  The first is from an analyst

in the Office of Corporate Governance & Transactions at AIG's general insurance division.

Garces Decl., Dkt. 68 ¶ 2.  Ms. Garces states that AIGPCI is a holding company that "does not

sell, write, or issue primary or excess insurance or reinsurance, either on its own account or for

any insurer, including but not limited to its indirect subsidiaries named in this litigation, AIG

Property Casualty Company or Lexington Insurance Company," *id.* ¶ 4, and that, accordingly,

AIGPCI could not have issued any policy that is at issue in this litigation, *id.* ¶ 5.  The second

declaration is from an AIG senior paralegal who declares that he was "unable to locate a policy

issued by the Defendant [AIGPCC] that covered L.F. or L.F.'s accident-related medical costs and expenses."  Bogard Decl., Dkt. 67 at ¶ 6a.[23]

When defendants proffer evidence beyond the pleading as part of a fact-based motion, "the plaintiffs will need to come forward with evidence of their own to controvert that presented by the defendant."  *Carter*, 822 F.3d at 57.  Instead of coming forward with additional evidence,[24] Plaintiff argues that Defendants have admitted that they are primary payers by virtue of filing notice of claims with CMS and that Defendants' "[d]eclarations do nothing to reconcile Defendants' disparate positions."  Pl. Resp. at 10.  Plaintiff quotes extensively from the relevant statutes and regulations to argue that "the MSP Act itself requires 'applicable plans' to acknowledge and accept primary payer responsibility."  Pl. Resp. at 7; *see also id.* at 7–8. Accordingly, Plaintiff contends that by listing itself on the CMS reporting, each Defendant has admitted that it is the primary plan at issue for the respective exemplar claims.

But Plaintiff's argument conveniently ignores the fact that CMS allows an entity to report "for itself or any direct subsidiary in its corporate structure."  *See* CMS Policy Guidance, Medicare Secondary Payer Mandatory Reporting, at 14;[25] *see also* Pl. Resp. at 3.  The CMS operating guidance makes clear that CMS reporting does not constitute an admission by the reporting entity that it is the primary plan in connection with the reported event; instead, such

---

[23]     The paralegal confirmed that S.C. filed a claim against an insurance policy issued by Defendant Lexington Insurance Company.  Bogard Decl., Dkt. 67 ¶ 6b.

[24]     The Court finds it odd that Plaintiff was unable or unwilling to obtain additional information from the MAOs about the claims and insurance plans at issue, especially given cooperation requirements contained in each of the assignment agreements.  *See, e.g.*, FAC Ex. R ¶ 1.1.3 ("Upon request, Assignor will provide MSP Recovery (or its designated agents, including MSP Recovery, LLC) with copies of all documents, records, and information necessary for MSP Recovery to identify and pursue the Assigned Claims, including establishing MSP Recovery's legal standing to pursue the Assigned Claims.").  *See also* Section IV of this opinion, *infra*.

[25]     The full CMS Policy Guidance is available at https://www.cms.gov/Medicare/Coordination-of-Benefits-and-Recovery/Mandatory-Insurer-Reporting-For-Non-Group-Health-Plans/Downloads/New-Downloads/NGHPUserGuide-Version-56-Chapter-III_Policy-Guidance.pdf (last visited Mar. 25, 2021).

reporting simply confirms that the reporting entity or a direct subsidiary of the reporting entity *may* provide coverage for the accident.  Without any evidence to controvert Defendants' declarations and to link AIGPCI and AIGPCC to the accidents that purportedly give rise to a reimbursement obligation, Plaintiff has not adequately pled causation, precluding it from having standing over the exemplary claims associated with medical care provided to J.M., S.A., L.F. and J.F.[26]

### 2. Plaintiff Has Not Adequately Pled that the Exemplar Patients' Alleged Injuries Implicated the Alleged Insurance Policies

Plaintiff has not adequately alleged that the medical care provided to the exemplar patients was for injuries that would have been covered by the insurance policies or settlement agreements allegedly issued or entered into by Defendants.  Plaintiff alleges in a conclusory fashion that the exemplar patients "sustained injuries that required medical items and services" and attaches a list of diagnosis codes and injuries "assigned to [the exemplar patient] in connection with [the patient's] accident-related treatment" to the FAC.  FAC ¶¶ 53, 63, 73, 83, 93.  But Plaintiff alleges nothing about the nature of the accidents that allegedly required the medical items and services in the first place.  Without at least some allegations about the nature of the accidents, there is nothing beyond Plaintiff's *ipse dixit* and the fact that the medical care was provided on the date of or subsequent to the date of the accident that links the alleged insurance policies or settlement agreements to the medical items and services provided.

A different case brought by a Plaintiff-affiliated entity illustrates the fallacy of relying only on chronology to assert that an automobile insurance company is a primary payer.  In *MAO-*

---

[26]      *See also MSP Recovery Claims, Series LLC. v. Progressive Corp.*, No. 18-CV-2273, 2019 WL 5448356, at *12–13 (N.D. Ohio Sept. 17, 2019) ("Plaintiffs point the Court to exhibit lists where Defendants [allegedly] 'admitted' they were to provide primary payment on behalf of enrollees [but] this does not provide competent evidence to contravene Defendants' Declaration that [companies at issue] are not legal entities subject to suit.").

*MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, one of the exemplar patients had knee replacement surgery prior to being in an automobile accident.  No. 17-CV-1537, 2019 WL 6311987, at *4–5 (C.D. Ill. Nov. 25, 2019), *appeal dismissed*, No. 20-1268, 2020 WL 4982642 (7th Cir. July 24, 2020).  On summary judgment, the court found that Plaintiff did not have standing over that exemplar claim because the post-accident appointments were not related to the accident; that being the case, the automobile insurance company was not the primary payer and the MAO had no right to be reimbursed for payments it made for medical services provided to the patient.  *Id.*  While the standard of review at summary judgment is obviously more stringent than at the motion to dismiss stage, Plaintiff is still obligated to allege sufficient facts to nudge its claims into the realm of possible and out of the realm of pure speculation.  In this case, that would take the form of some basic allegations regarding how the exemplar patient was injured and regarding the nature of medical care provided.

A review of the diagnostic codes listed for the exemplar claims reveals the inadequacy of Plaintiff's conclusory approach and suffices to further illustrate the problem.  According to the FAC, L.F. was injured in an accident (presumably, though never actually alleged, an automobile accident) on June 15, 2015.  FAC ¶ 51.  From Exhibit B, on which Plaintiff provides items of purportedly unreimbursed medical care that were provided to L.F., one can deduce that L.F. was taken to the hospital in an ambulance; that, at some point, an electrocardiogram ("EKG") was done;[27] and, from August 4, 2015, to October 23, 2015, L.F. received physical therapy.[28]   The

---

[27]     *See* entry on June 15, 2015, diagnosis code CPT 93005.  CPT 93005 appears to be the code for an electrocardiogram.  *See* 93005, CPT Code Set, https://www.findacode.com/cpt/93005-cpt-code.html (last visited Mar. 25, 2021).

[28]     *See* entries dated August 4, 2015 through October 23, 2015, diagnosis code CPT 97140.  Per the American Chiropractic Association, CPT 97140 is the code for "manual therapy."  *See CPT Position on the Proper Use of Procedure Code 97140*, Am. Chiropractic Ass'n, https://www.acatoday.org/LinkClick.aspx?fileticket=mwNx3rFnBWo%3D&portalid=60 (last visited Mar. 25, 2021).

immediate question that occurs to the Court: was the EKG performed *because* of the accident or was L.F. in an accident because he or she was suffering from chest pain and was racing to the hospital?  Similarly, was he or she in physical therapy because of the accident or because of a pre-existing or subsequent fall?  There are no facts anywhere in the FAC or in its many attachments that would allow the Court to infer that the EKG and physical therapy were necessary because of the accident.  Without factual allegations from which the Court can conclude that it is possible that the medical care was necessitated by the accident, the Court is left with pure speculation.  Put differently, Plaintiff has failed to adequately allege that Defendants caused the MAO harm as to L.F.; without such allegations, it has failed to establish Article III standing over claims arising from the care of L.F.

The Court has similar questions about the remaining exemplar patients.  For example, S.C. — the only exemplar patient as to whom Plaintiff has sued a potentially-liable Defendant — may have suffered a broken or hurt leg as a result of an accident.[29]  S.C. was later treated for anemia and received Warfarin, a medication used to treat blood clots.[30]  While such diagnoses and medication could be related to the hurt leg, and the leg could have been hurt in the accident, they could also be the result of a pre-existing blood or other condition.  This is not such a far-fetched idea; Medicare patients are, by definition, usually over 65, an age at which co-

---

[29]     *See* FAC Ex. H (listing diagnosis code 71946 in the first fourteen entries); *ICD-9 Diagnosis Codes*, Am. Hosp. Directory, https://www.ahd.com/reference/ICD9desc_diag_CMS2015.pdf [hereinafter *ICD-9 Diagnosis Codes*] (defining code 71946 as leg joint pain) (last visited Mar. 25, 2021).

[30]     *See* FAC Ex. H (listing diagnosis code 2859 for entries dated between February 13, 2014 and March 11, 2014 and stating that the patient received Warfarin on several occasions); *ICD-9 Diagnosis Codes* (defining code 2859 as anemia); *Warfarin*, Medline Plus, U.S. National Library of Medicine, https://medlineplus.gov/druginfo/meds/a682277.html#why (describing Warfarin as a drug used to treat blood clots) (last visited Mar. 25, 2021).

morbidities are not uncommon.[31]  While S.C.'s entire treatment regimen could be related to his

or her accident, making the costs of such treatment reimbursable, drawing this conclusion is pure

conjecture, which is insufficient to allege standing.[32]

In summary, with respect to all five exemplar claims, Plaintiff has not adequately alleged

that the MAOs suffered an injury by incurring reimbursable costs (*i.e.*, costs for care that was

related to an accident for which a primary plan was responsible) or that one of the Defendants

was the primary payer for the medical services provided.  Further, with respect to J.M., S.A., and

J.F., Plaintiff has not alleged that all of the medical services provided to them were within the

scope of the assignments made from the MAOs to Plaintiff's Series LLCs.  Also with respect to

J.M., S.A. and J.F., Plaintiff has not controverted Defendant's evidence that the policies at issue

could not have been issued by AIGPCI, which does not issue insurance policies.  And with

respect to L.F., Plaintiff has not refuted Defendant's evidence that AIGPCC did not issue the

insurance policy in question.  In short, Plaintiff has not adequately alleged standing to sue for

any of the exemplar claims, so they must be dismissed.

### III.    Plaintiff Lacks Standing to Sue for Claims Listed in Exhibit A and Any Other "Greater Universe" of Cases

Plaintiff alleges that, in addition to the five exemplar claims, it also has standing over the

claims listed in Exhibit A.  FAC ¶ 31.  But the allegations concerning those claims are even more

conclusory than the allegations about the five exemplar claims.  Plaintiff alleges that Exhibit A is

---

[31]     In addition to people age 65 or older, Medicare also covers "younger people with disabilities and people with End Stage Renal Disease."  *See Who Is Eligible for Medicare?*, HHS, https://www.hhs.gov/answers/medicare-and-medicaid/who-is-elibible-for-medicare/index.html.  Were the exemplar patients to fall into these categories, the likelihood that they would have co-morbidities unrelated to their purported accidents is presumably even higher.

[32]     The Court refrains from such detailed analysis for the remaining three patients as to whom Plaintiff has not sued a Defendant who could be liable.  Needless to say, the Court presumes that as to all three, the records raise similar issues calling into question the connection between the alleged accident and the medical items and services provided.

"a list of Medicare beneficiaries who were enrolled with Plaintiff's assignors at the time of the accidents in question" and for whom Defendants' filed reports with CMS.  Pl. Resp. at 5.  But the bare information in Exhibit A is insufficient to allege standing adequately.  Plaintiff has not named the MAOs that provided payment for services and that were allegedly not reimbursed and has not provided any information about the alleged assignments, pursuant to which Plaintiff purportedly would have the authority to pursue the claims.[33]  Several courts have found that such limited information is insufficient to allege standing.  *See Tech. Ins. Co., Inc.*, 2020 WL 91540, at *3 (S.D.N.Y. Jan. 8, 2020) (finding no standing when the complaint does not allege information about the assignment agreements); *Merchants Mut. Ins. Co.*, 2020 WL 8675835, at *8 (same); *MSP Recovery Claims, Series LLC v. AIX Specialty Ins. Co.*, No. 18-CV-1456, 2020 WL 5524854, at *11 (M.D. Fla. Aug. 10, 2020), *appeal dismissed on consent of parties*, No. 20-13407, 2021 WL 963577 (11th Cir. Jan. 5, 2021) (same).  The Court agrees that without additional information, Plaintiff has not adequately pled that it has standing to pursue those claims.

Plaintiff also claims that it has standing over a "greater universe of instances on which Defendants have failed to pay for accident-related expenses and/or reimburse conditional payments made by Plaintiff's Assignors."  FAC ¶ 31.  Plaintiff has provided no information about these claims.  Without any way to assess whether Plaintiff has standing to pursue such amorphous contentions, the Court must dismiss them.

The fact that this is a putative class action does not change the inquiry.  "[E]ven named plaintiffs who represent a class must allege and show that they personally have been injured, not

---

[33]     Appendix 1 to the FAC details assignments from MAOs for the exemplar patients, but there is no equivalent document that outlines the relevant assignments for the claims listed in Exhibit A.  Moreover, nothing in Exhibit A links the patients to particular MAOs or links any patient to a particular accident on a particular day.

that injury has been suffered by other, unidentified members of the class to which they belong." *Spokeo, Inc.*, 136 S. Ct. at 1547 n.6.  Plaintiff's alleged "greater universe of claims" is somewhat akin to unidentified members of the class.  Without allegations specific to these claims, Plaintiff has not adequately alleged that it has standing to pursue them.

In short, Plaintiff has not alleged that it has standing over the "claims" listed in Exhibit A, let alone over any greater universe of claims about which no information is provided.

## IV. The Court Denies Plaintiff's Request for Jurisdictional Discovery

Plaintiff claims that the Court should allow jurisdictional discovery in this matter.  *See* Pl. Resp. at 8–9 ("To the extent Defendants now claim their CMS reporting should not be relied upon, limited discovery as to which of their subsidiaries are, in fact, primary payers is warranted."); *id.* at 10 ("Plaintiff is entitled to discovery . . . .").  Such statements are a reiteration Plaintiff's request for jurisdictional discovery made at the initial pre-trial conference in this action.  *See* Conference Tr., Dkt. 45 at 12 (requesting jurisdictional discovery "limited to those instances of overlapping reportings that [Plaintiff has] identified thus far").  But as the Court noted then, Plaintiff's request "suggests that [it] can't draft an adequate complaint without discovery," and that "that's not the purpose of discovery."  *Id.*  The Court reaffirms its initial order denying jurisdictional discovery.[34]  Plaintiff, as the party invoking federal jurisdiction, bears the burden of establishing it.  *Lujan*, 504 U.S. at 561.  Defendants are not required to help.

Moreover, Plaintiff's demand for jurisdictional discovery is especially puzzling given that Plaintiff had "ample opportunity to uncover and present evidence relating to the events bearing on the jurisdictional question," a factor courts consider when determining whether to

---

[34] District courts have "wide latitude" to determine the scope of discovery.  *Broidy Cap. Mgmt. LLC v. Benomar*, 944 F.3d 436, 446 (2d Cir. 2019) (quoting *Frontera Res. Azer. Corp. v. State Oil Co. of Azer. Republic*, 582 F.3d 393, 401 (2d Cir. 2009)).

grant jurisdictional discovery.  *Amidax Trading Grp.*, 671 F.3d at 149.  The assignment agreements at issue each facilitate information sharing between the MAO and Plaintiff's Series LLCs.  The CONC, HFHP, and EHTH assignment agreements not only assign claims, they also assign "all information" relating to the assigned claims.  *See* FAC Ex. L at 2; FAC Ex. M at 1; FAC Ex. N at 1; FAC Ex. O at 1; FAC Ex. P at 2; FAC Ex. Q at 1.  The AVDI assignment agreement goes even further, stating that "[u]pon request, Assignor will provide MSP Recovery (or its designated agents, including MSP Recovery, LLC) with copies of all documents, records, and information necessary for MSP Recovery to identify and pursue the Assigned Claims, including establishing MSP Recovery's legal standing to pursue the Assigned Claims."  FAC Ex. R ¶ 1.1.3.

As far as the Court can tell from what it includes in the FAC, Plaintiff has done absolutely nothing to obtain relevant information from its assignors.  At a minimum, for example, one would have thought it would have gathered evidence from the MAOs regarding the five exemplar claims so that it could allege facts adequate to support its conclusory allegations regarding Defendants' responsibility to reimburse the MAOs for the services for which the MAOs paid.  Plaintiff has tendered no excuse for not having more information from the assignors, and the Court declines to authorize jurisdictional discovery so that Plaintiff can get such information from Defendants, at least one of which does not even write insurance policies.

## CONCLUSION

For the reasons discussed above, Plaintiff has not alleged that it has Article III standing.  Accordingly, Defendants' Rule 12(b)(1) motion to dismiss for lack of subject-matter jurisdiction is GRANTED.  Defendants' motions to strike class allegations and for costs are DENIED as moot.  *See* Dkts. 22, 24.

The Court declines to grant Plaintiff leave to amend again its complaint.  The Court has already allowed Plaintiff to amend once and is disinclined to do so again.  *See* Order, Dkt. 54; *see also Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008) (noting that leave to amend may be properly denied for "repeated failure to cure deficiencies.").  If this were the first of this type of case that Plaintiff had filed, the Court might be inclined to give it another shot at adequately alleging standing.  But this is far from Plaintiff's first rodeo.  Plaintiff has brought many of these cases around the country and was, therefore, "on notice from the outset that the issue of standing would be front and center."  *State Farm Mut. Auto. Ins. Co.*, 2019 WL 6311987, at *9.  Because Plaintiff has had plenty of trial runs and has already amended its complaint against these Defendants once, the Court declines to grant leave to amend again as it would be futile.

This matter is hereby dismissed without prejudice.  *See John v. Whole Foods Mkt. Grp., Inc.*, 858 F.3d 732, 735 (2d Cir. 2017) ("[W]here a complaint is dismissed for lack of Article III standing, the dismissal must be without prejudice, rather than with prejudice.") (cleaned up).

The Clerk of Court is respectfully directed to terminate all open motions and to close this case.


**SO ORDERED.**

**Date:  March 26, 2021**
                                 **VALERIE CAPRONI**
**New York, New York**
                                 **United States District Judge**