**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**CASE NO. 1:20-2102**

MSP RECOVERY CLAIMS, SERIES LLC,
a Delaware entity,

       Plaintiff,

v.

AIG PROPERTY CASUALTY COMPANY,
a New York for-profit corporation, AIG
PROPERTY CASUALTY, INC., a Delaware
corporation, and LEXINGTON INSURANCE
COMPANY, a Delaware company,

       Defendants.

_____/

**PLAINTIFF'S VERIFIED MOTION FOR RECONSIDERATION**
**OF THE COURT'S ORDER GRANTING DEFENDANTS'**
**MOTION TO DISMISS WITHOUT PREJUDICE (ECF Nos. 76 & 77)**

## TABLE OF CONTENTS

INTRODUCTION..................................................................................................... 1

ARGUMENT ............................................................................................................. 1

    A.    **Multiple Grounds Support Reconsideration
of the Court's Order, (ECF No. 76)**..................................................... 1

        *i.*    *Motion for Reconsideration Standard*.................................... 1

        *ii.*    *The Corrected Declaration of Christopher Miranda
Supports Reconsideration* ........................................................ 2

        *iii.*    *Defendants' Argument on CMS Reporting
Led this Court to Error* ........................................................... 6

        *iv.*    *The Exemplar Claims Fall within the Assignment
Agreements as Alleged* ........................................................... 8

        *v.*    *The Court's Merits-Based Review Was Premature
at this Stage of the Litigation* ............................................... 10

CONCLUSION ........................................................................................................ 13

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bay Cities Paving & Grading v. Lawyers' Mut.*,
  21 Cal. Rptr. 2d 691 (Cal. 1993) ........................................................................... 9

*Continental Cas. Co. v. Wendt*,
  205 F.3d 1258 (11th Cir. 2000) ............................................................................. 9

*Exportaciones Del Futuro S.A. De C.V. v. Iconix Brand Group Inc.*,
  Case No. 07-civ-4145, 2007 U.S. Dist. LEXIS 83309 (S.D.N.Y. Nov. 6, 2007) .............. 2

*Gregory v. Home Ins. Co.*,
  876 F.2d 602 (7th Cir. 1989) ................................................................................. 9

*Heath v. Isenegger*,
  2011 U.S. Dist. LEXIS 68918 (N.D. In. June 28, 2011) ...................................... 4

*Humana Med. Plan Inc. v. W. Heritage*,
  832 F.3d 1229 (11th Cir. 2016) ........................................................................... 11

*Ind. Hard Chrome, Ltd. v. Hetran*, *Inc.*,
  64 F. Supp. 2d 741 (N.D. Ill. 1990) ..................................................................... 4

*MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.*,
  Case No. PWG-17-711, 2018 U.S. LEXIS 27654 (D. Md. Feb. 21, 2018) ...................... 11

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
  2018 U.S. Dist. LEXIS 117356 (C.D. Ill. July 13, 2018) ................................... 12

*MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*,
  2019 U.S. Dist. LEXIS 204397 (C.D. Ill. Nov. 25, 2019) .................................. 12

*MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*,
  974 F.3d 1305 (11th Cir. 2020) ............................................................................. 6

*MSP Recovery Claims, Series LLC v. AIX Spec. Ins. Co.*,
  Case No. 6:18-cv-1456, 2019 U.S. Dist. LEXIS 86051 (M.D. Fla. May 22, 2019) ......... 13

*MSP Recovery Claims, Series LLC v. Erie Indem. Co.*,
  Case No. 20-75 Erie (W.D. Pa. Mar. 22, 2021) .............................................. 11

*MSP Recovery Claims, Series LLC v. OneBeacon Ins. Grp., Ltd., et al.*,
  Case No. 6:20-cv-553-Orl-37EJK (M.D. Fla. 2021) ............................................ 5, 11, 12

*MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*,
    Case No. 20-cv-20887 (S.D. Fla. 2021)................................................................ 5

*MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*,
    950 F.3d 764, 774-75 (11th Cir. 2020) .............................................................. 7

*Nakano v. Jamie Sadock, Inc.*,
    98 Civ. 0515, 2000 U.S. Dist. LEXIS 10158 (S.D.N.Y. July 20, 2000) ........................... 2

*Perez v. Del Monte Fresh Produce N.A., Inc.*,
    2012 U.S. Dist. LEXIS 96583 (D. Or. Apr. 18, 2012) ...................................................... 4

*RSM Prod. Corp. v. Fridman*,
    2008 U.S. Dist. LEXIS 72058 (S.D.N.Y. Sept. 23, 2008)................................................. 1

*Schillinger v. Union Pac. R.R. Co.*,
    425 F.3d 330 (7th Cir. 2005) .......................................................................................... 4

## **Statutes**

42 U.S.C. § 1395y(b) ............................................................................................... 1, 6, 10

## **Other Authorities**

CMS, NGHP User Guide, Version 6.2, Chapter III: Policy Guidance, Rev. Jan. 11, 2021, § 6.3,
    *available at* https://www.cms.gov/files/document/mmsea-111-january-11-2020-nghp-
    user-guide-version-62-chapter-iii-policy-guidance.pdf
    (last visited Mar. 30, 2021). .......................................................................................... 8

Medicare Secondary Payer Act Manual, Chapter 7, § 50.1 ......................................................... 7

## **Rules**

Fed. R. Civ. P. 56 ........................................................................................................ 12

## INTRODUCTION

On March 26, 2021, the Court granted the Defendants' Motion to Dismiss under Rule

12(b)(1), dismissing this action without prejudice, and without leave to amend. (ECF Nos. 76 &

77). The Court's standing analysis was impacted by unintentional scrivener's errors in the

Declaration of Christopher Miranda – errors attributable to transcription mistakes by counsel

whose oversights should not prejudice his client or undermine the data supporting its claims

under 42 U.S.C. § 1395y(b)(3)(A). Because the undersigned's error impacted the presentation of

Plaintiff's claims, Plaintiff respectfully submits that reconsideration is appropriate. A review of

the corrected declaration of Mr. Miranda (attached hereto as Exhibit A), the language of

Plaintiffs' assignment agreements, and the terms of 42 U.S.C. § 1395y(b)(7)-(9) support a

finding that, at this early stage of the litigation, Plaintiff adequately alleged standing to pursue

the exemplar claims against the Defendants.

## ARGUMENT

**A.    Multiple Grounds Support Reconsideration of the Court's Order, (ECF No. 76)**

### *i.    Motion for Reconsideration Standard*

Motions for reconsideration are governed in this district by the standards and procedural

requirements contained in Local Civil Rule 6.3 and Federal Rule of Civil Procedure 59(e). A

party moving for reconsideration must, in accordance with Local Civil Rule 6.3, set "forth

concisely the matters or controlling decisions which counsel believe the court has overlooked."

A motion for reconsideration "allows a party to direct the court to an argument the party has

previously raised but the Court" did not consider. *RSM Prod. Corp. v. Fridman*, 2008 U.S. Dist.

LEXIS 72058, *4-5 (S.D.N.Y. Sept. 23, 2008). Reconsideration is appropriate where the movant

demonstrates that "the Court has overlooked controlling decisions or factual matters that were

1

put before it on the underlying motion, and which, had they been considered, might have reasonably altered the result before the Court." *Nakano v. Jamie Sadock, Inc.*, 98 Civ. 0515, 2000 U.S. Dist. LEXIS 10158, *4 (S.D.N.Y. July 20, 2000); *Exportaciones Del Futuro S.A. De C.V. v. Iconix Brand Group Inc.*, Case No. 07-civ-4145, 2007 U.S. Dist. LEXIS 83309, *2-7 (S.D.N.Y. Nov. 6, 2007) (reconsidering order of dismissal and permitting leave to amend). Reconsideration is warranted here for a few reasons.

### ii.    *The Corrected Declaration of Christopher Miranda Supports Reconsideration*

The Declaration of Christopher Miranda contained unintentional scrivener's errors[1] relating to the L.F. and J.M.[2] exemplar claims, which prevented the Court's full consideration of the evidence in opposition to the Defendants' factual standing attack. *See* ECF No. 76 at 6 n.1 (couching Defendants' standing challenge as "mostly fact-based"). Namely, the Amended Complaint alleges that exemplar beneficiary L.F. was previously enrolled with Connecticare, Inc. ("Connecticare"), and that the associated claim for unreimbursed conditional payments was assigned to a designated series of MSP Recovery Claims, Series LLC. *See* ECF No. 55 at ¶ 50. The Amended Complaint similarly alleges that the J.M. claim was paid and later assigned by Health First Health Plans, Inc. ("HFHP"). *See* ECF No. 55 at ¶ 60. Paragraphs 16 and 18 of the Declaration properly describe the L.F. claim as being within the "Assigned Medicare Recovery

---

[1] A scrivener's error is defined as a "clerical error," which is "[a] error resulting from a minor mistake or inadvertence, especially in writing or copying something . . . ." *Black's Law Dictionary* (8th Ed. 2004). Examples include "omitting an appendix from a document; typing an incorrect number; [and] mis-transcribing a word . . ." *Id.*

[2] Plaintiff uses initials rather than names in this context in order to protect the privacy of the underlying Medicare beneficiaries.

2

Claims" defined in the Connecticare Agreement, and the J.M. claim as falling within the HFHP Assignment's[3] definition of "Assigned Claims." (ECF No. 70-1 at ¶¶ 16-18).

Accidentally, however, the assignment descriptions for J.M. and L.F. were later transposed in paragraphs 20 and 21of the Declaration, describing the claims' dates of service and associated payment dates. *See* ECF No. 70-1 at ¶¶ 20-21; *compare* Ex. A at ¶¶ 20-21. Any confusion this may have caused regarding treatment and payment dates, however, was principally the product of human error on the part of the initial drafter, and not "basic errors" or a "misreading" of Plaintiff's exhibits by Mr. Miranda.[4]

The types of errors contained in the Declaration are scrivener's errors. Mr. Miranda properly interpreted the Amended Complaint's exhibits in a manner consistent with the Court's later review of those documents. And he communicated those interpretations to the undersigned for memorialization in the Declaration. Mr. Miranda reviewed the Declaration before signing the document, but similarly and accidentally overlooked the transposed assignment descriptions and date typos. Those clerical errors have been addressed, and Mr. Miranda's corrected declaration is

---

[3] Capitalized terms not otherwise defined here have the meaning ascribed to them in the Amended Complaint, (ECF No. 55).

[4] Plaintiff's decision to seek reconsideration is not made lightly. Plaintiff understands the Court's order was without prejudice, and Plaintiff might otherwise "take its lumps" and move on. But the Order's statements about a scrivener's error in the declaration of Mr. Miranda have caused a feeding frenzy among the defense bar. Not even 24 hours had passed before counsel for auto insurer defendants filed the Order in cases across the country as supplemental authority, even in cases where the Order has no bearing on any pending issues. For these reasons, Plaintiff is compelled to explain to this Court how the scrivener's error came to be, and why that error has nothing to do with the competence of Mr. Miranda – whose knowledge regarding Medicare claims data and Plaintiff's claims has been established and relied upon in dozens of similar cases. Plaintiff understands the high hurdle of reconsideration, but at the very least, hopes that its explanation gives the Court a better understanding regarding the mistake that the Court noticed and is now being taken completely out of context.

included with this Motion. His attestations are consistent with the exhibits to the Amended Complaint and his analysis is accurate.

For better or worse, we are all human and mistakes do happen. As a result, case law discloses a long history of dealing with drafting errors. Courts generally address scrivener's errors by permitting amendment and avoiding any prejudice where parties act with diligence to cure their oversights. *See Heath v. Isenegger*, 2011 U.S. Dist. LEXIS 68918, *7-8 (N.D. In. June 28, 2011) ("Excusable neglect, such as a scrivener's error, is permissible cause to warrant granting leave to amend a pleading."); *Ind. Hard Chrome, Ltd. v. Hetran, Inc.*, 64 F. Supp. 2d 741, 747-48 (N.D. Ill. 1990) (granting leave to amend complaint due to a scrivener's error); *Perez v. Del Monte Fresh Produce N.A., Inc.*, 2012 U.S. Dist. LEXIS 96583, *40-41 (D. Or. Apr. 18, 2012) (remanding case where "Plaintiffs' inclusion of the language expanding the class period in the Third Amended Complaint falls within the definition of scrivener's error. Plaintiffs' counsel represents that when it came time to file the new second amended complaint . . . he was unable to locate his file copy so he looked to the second [notice of removal] filed by the defendant and used the first document that appeared to be the new second amended complaint to prepare a clean copy to file with the court . . . . The error resulted in a minor mistake, from Plaintiffs' counsel inadvertently using the wrong version of the new second amended complaint found in the [second notice of removal], and not from a judicial tactic or intentional deception."); *Schillinger v. Union Pac. R.R. Co.*, 425 F.3d 330, 331-34 (7th Cir. 2005) ("But an amendment that is made for legitimate purposes may be a proper ground for a remand to state court . . . . The correction of a clerical mistake falls into [that] category, and the district court would properly have granted a motion to remand if plaintiffs had amended their complaint to correct the

mistake."). And that is what Plaintiff is doing here – promptly correcting its mistakes.[5] Under the circumstances, there is no reason for the Court to distrust Mr. Miranda's analysis and it should reconsider Plaintiff's standing with the benefit of that evidence.

For example, the Court determined that Plaintiff could not satisfy prong 3 of the standing analysis because Mr. Miranda "confused J.M. and L.F." and the Court "[had] no way of knowing" whether and against which carveout lists the J.M. claim was compared. *See* ECF No. 76 at 17. There is, however, no confusion as to J.M.'s Medicare Advantage plan, and that the recovery claim was assigned by Health First Health Plans. And Mr. Miranda swore that the J.M. claim was not subject to any carve-outs or exclusions and fell within the scope of the HFHP Assignment. *See* ECF No. 76 at 17. Courts have found *unsworn* allegations of the same facts sufficient at the pleading stage. *See, e.g., MSP Recovery Claims, Series LLC v. OneBeacon Ins. Group, Ltd., et al.*, Case No. 6:20-cv-553-Orl-37EJK, ECF No. 45 (attached as Exhibit B), slip op. at 7 (M.D. Fla. Jan. 19, 2021) ("But this argument ignores the allegations in the actual Complaint, where Plaintiff [and the] claims are not subject to any carveouts, exclusions, or any other limitations. So Plaintiff has alleged assignment of E.S.'s claims."); *MSP Recovery Claims, Series LLC v. United Auto. Ins. Co.*, Case No. 20-cv-20887-Altonaga, ECF No. 67 at 5-6 (attached as Exhibit C) (S.D. Fla. Feb. 4, 2021) ("Plaintiff asserts that 'each of the individual claims . . . has been assigned to Plaintiff, [and] [t]he claims are not subject to any carveouts, exclusions, or any other limitations . . . . The Court concludes at the motion-to-dismiss stage, Plaintiff has set forth sufficient allegations to avoid dismissal of the named Plaintiff, MSP Recovery Claims, Series LLC, for lack of standing.").

---

[5] Plaintiff notes that the errors detected by the Court were not raised by the Defendants in their Reply Brief. *See*, ECF No. 73 at 3-5.

### iii.        *Defendants' Argument on CMS Reporting Led this Court to Error*

The Eleventh Circuit, with the benefit of the Department of Health and Human Services' direct guidance, held that primary payers' "filings with HHS under 42 U.S.C. § 1395y(b)(7)-(9), which obligates insurers like Defendants to report claims for which they are primary payers . . . evidence Defendants' knowledge that they owed primary payments, *including the primary payments for which Plaintiffs seek reimbursement.*" *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d 1305, 1319 (11th Cir. 2020) (Walker, J., sitting in designation from the 2d Circuit). That decision is based on the unambiguous language of the Medicare Secondary Payer law, which places an affirmative obligation on primary payers, like the Defendants, to "determine whether a claimant . . . is entitled to benefits under the program," and then report its primary payer responsibility to CMS "under subparagraph A(ii) *after the claim is resolved through a settlement, judgment, award, or other payment [(such as payment under a no-fault policy)]* (regardless of whether or not there is a determination or admission of liability)." 42 U.S.C. § 1395y(b)(8)(B)-(C) (emphasis added).

Defendants invited the Court to error with citation to one clause in subsection (C) of Section 1395y(b)(8) that states "regardless of whether or not there is a determination of liability." Defendants invited the Court to read this to mean that its reports to the federal government under Section 1395y(b)(8) are meaningless. The statutory text does not support such a reading because the preceding clause makes clear that a primary payer "shall" submit a report only "***after*** the claim is resolved through a settlement, judgment, award, or other payment . . . ." The text does not say that primary payers should submit reports merely when a claim is made, and such a construction makes little sense given its purpose.

6

If that were the case, it would render worthless Section 111 reporting and cause Medicare to waste taxpayer money chasing after unreimbursed payments where the primary payer ultimately is not responsible. HHS rejected such a result, as did the Eleventh Circuit, on numerous occasions, including in one decision written by a Second Circuit judge by designation. *Ace*, 974 F.3d at 1319; *see also MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764, 774-75 (11 Cir. 2020) (rejecting a similar interpretation of the claims-filing provision that would "incentivize MAOs to file as many reimbursement requests as necessary with entities that might *possibly* be responsible" and noting that the text does not support "such a shotgun approach" that would result in "structural oddities within the Medicare Secondary Payer Act.").

Further, Medicare itself has made clear that the "regardless of whether or not there is a determination of liability" language does not mean what Defendants think it means. Insurers commonly settle bodily injury claims where they disclaim liability. To prevent insurers from later saying that this disclaimer is a defense to liability under the Medicare Secondary Payer Act, Medicare has made clear in published guidance that, because "[i]t is common for insurance companies to settle claims without admitting liability . . . *any payment* by a liability insurer . . . constitutes a liability insurance payment whether there has been a determination of liability." *See* Medicare Secondary Payer Act Manual, Chapter 7, § 50.1, attached as Exhibit D. Thus, what Congress means with the "regardless" language is that if a primary payer makes a payment of any kind, whether it be under a liability policy or a no-fault policy, that payment triggers a payment responsibility to Medicare, which must be reported.[6]

---

[6]    Defendants also invited the Court to error with their citation to an expert report of Michael F. Arrigo, who merely repeated the statutory language in his report. Subsection (8)(A)(i) sets forth the requirement of primary plans to "determine whether a claimant . . . is entitled to benefits" under Medicare. If so, subsection (8)(C)—called "Timing"—sets forth *when* the primary payer should report. And the triggering event is "*after* the claim is resolved . . . ." The "regardless of whether

7

The clear and common-sense reading of the statute, and drawing all reasonable inferences in Plaintiff's favor, compel the conclusion that Plaintiff satisfied the second prong of the Court's standing analysis because Defendants' reporting is an admission of primary payer responsibility for the conditional payments at issue here and demonstrates that Defendants' failures to reimburse *caused* the alleged economic injuries sustained by Plaintiffs' assignors. And the *actual* reasons for Defendants' reporting—that is, a deliberate response to specific statutory standards—supports Plaintiff's position that the plans that reported are responsible for payment.

### iv.    *The Exemplar Claims Fall within the Assignment Agreements as Alleged*

The Court's analysis of the third prong of its standing inquiry appears to overlook important language in the AVDI and EHTH Assignment Agreements regarding the scope of the assigned claims. The Court determined that "50% of S.A.'s claims" fell outside of the temporal scope of AVDI's assignment" and "78% of the claims related to J.F.'s medical treatment were not assigned to a Series LLC" because the treatments fell outside the time period covered by the

---

or not there is a determination of liability" language prevents primary plans from evading their duties to report, by paying a liability claim but denying or disclaiming liability.

   CMS' guidance likewise describes the two categories of reporting thresholds for liability and workers' compensation claims which define the scope of claims insurers report. The first is that liability and no-fault insurers report when they have "ongoing responsibility for medicals," and that obligation is triggered after the primary payer "exercise[s] due diligence" and determines its responsibility to pay for a Medicare beneficiary. The reference to "ongoing . . . [refers] to the [primary payer's] responsibility to pay, on an ongoing basis, for the injured party's (Medicare beneficiary's) medicals associated with the claim." CMS, NGHP User Guide, Version 6.2, Chapter III: Policy Guidance, Rev. Jan. 11, 2021, § 6.3, *available at* https://www.cms.gov/files/document/mmsea-111-january-11-2020-nghp-user-guide-version-62-chapter-iii-policy-guidance.pdf (last visited Mar. 30, 2021). The second category is that liability and no-fault insurers must report their "total payment obligation to the claimant. That is, liability and no-fault insurers report "the dollar amount of a settlement, judgment, award, or other payment in addition to or apart from [their ongoing responsibility for medicals]." CMS, NGHP User Guide, Version 6.2, Chapter III: Policy Guidance, *supra*, § 6.4. The sum total of the Statute and CMS regulations make clear that primary payers report when they are primarily responsible for medical expenses on the claims reported.

EHTH Assignment. *See* ECF No. 76 at 18. But the language of both assignments includes those claims.

Specifically, EHTH assigned all "right, title, interest in and ownership of Medicare Recovery Claims *related to* Medicare Health Care Services there were rendered and paid for by [EHTH] during the six-year period . . . ." ECF No. 55-16 at 1. "Related to" is not a restrictive phrase, but one that courts generally interpret to "encompass[] both logical and causal connections." *Continental Cas. Co. v. Wendt*, 205 F.3d 1258, 1262 (11th Cir. 2000) (citing *Bay Cities Paving & Grading v. Lawyers' Mut.*, 21 Cal. Rptr. 2d 691, 702 (Cal. 1993)); *Gregory v. Home Ins. Co.*, 876 F.2d 602, 605-06 (7th Cir. 1989) ("We agree with the *Helme* court that the common understanding of the word 'related' covers a very broad range of connections, both causal and logical . . . . Parties are generally free to include language of their choice in contracts, and courts should refrain from rewriting them."). The conditional payments sought to be recovered on behalf of J.F. all derive from an accident which occurred on August 22, 2017, and all of J.F.'s accident-related treatments—even those rendered and paid for beyond September 29, 2017—share a "logical and causal connection." The Court was concerned that Plaintiff's data analyst did not explain this issue further. But the explanation lies in the assignment's clear terms, and it makes sense that related unconditional payments form the basis of a single assigned claim under the MSP Act.

The AVDI Assignment's language also addresses the issue. There, AVDI assigned *both* "all Claims existing on the date hereof, whether based in contract, tort or statutory right" *and* "all related recovery rights arising from and related to the claims data transferred to MSP Recovery (or its affiliates or service providers, including MSP Recovery, LLC) . . . ." ECF No. 55-19 at 2. The entire S.A. claim is disclosed in the claims data transferred to Plaintiffs by AVDI, and the

accident-related conditional payments which extended beyond August 16, 2019 are related to and part of the MSP Act claim that arose from S.A.'s June 12, 2019 accident.

The S.A. claim is clearly not against one of AVDI's "network healthcare providers [or] current [or] former members" and, on its face, has nothing to do with the "GSK Cidra matter" in Cidra, Puerto Rico, which, from a simple Google search, has nothing to do with recoveries under the Medicare Secondary Payer Act (but rather payments made for adulterated and contaminated pharmaceutical drugs. *See* ECF 55-19 at 2.[7] Those points lend credence to Plaintiff's allegation that the claim is not subject to any carveouts – an allegation the Defendants offered no basis for the Court to treat as anything but true.

Mr. Miranda's corrected Declaration supports the same conclusion with respect to the J.M. claim, which was assigned by HFHP which "transferred to MSP Recovery only that claims data which relates to the 'Assigned Claims.'" Corrected Miranda Dec. at ¶ 18; *compare* ECF No. 70-1 at ¶ 18 (stating the same). And the Court correctly found "given that the Court must draw reasonable inferences in Plaintiff's favor, [it] concludes that L.F., S.C., and J.F.'s claims were not excluded from the assignment." ECF No. 76 at 17. In other words, all five of the exemplar beneficiaries present claims falling within the assignment chains alleged.

> ### v. *The Court's Merits-Based Review Was Premature at this Stage of the Litigation*

The Court's causation analysis was, in effect, a factual inquiry into the merits of Plaintiff's cause of action as opposed to the sufficiency of its standing allegations. The MSP Act's private cause of action, 42 U.S.C. § 1395y(b)(3)(A), is a succinct and straightforward. Federal courts interpreting the cause of action have held that it consists of three elements: (1) the

---

[7] https://www.justice.gov/opa/pr/glaxosmithkline-plead-guilty-pay-750-million-resolve-criminal-and-civil-liability-regarding, last visited April 1, 2021.

defendant's status as a primary payer; (2) the defendant's failure to provide for primary payment or appropriate reimbursement; and (3) damages. *Humana Med. Plan Inc. v. W. Heritage*, 832 F.3d 1229, 1239 (11th Cir. 2016). These elements are met by Plaintiff's Amended Complaint. *See OneBeacon*, Case No. 6:20-cv-553, ECF No. 45 at 12 ("At the motion to dismiss stage, to state a private cause of action, a plaintiff need only allege: (1) the defendants' responsibility was 'demonstrated' under the MSP Act and (2) the defendants are primary payers subject to suit under the private cause of action. As Plaintiff has so alleged, it 'seems to have done everything it needed to do' at this stage."); *MAO-MSO Recovery II, LLC v. Gov't Employees Ins. Co.*, Case No. PWG-17-711, 2018 U.S. LEXIS 27654, at *37-40 (D. Md. Feb. 21, 2018) ("The amended complaints contain a level of specificity that is sufficient for the court 'to draw the reasonable inference' that the MAOs made payments of medical supplies and services that GEICO, as the primary payer, was obligated to cover; that GEICO made payments on behalf of its insureds pursuant to settlement agreements; and that GEICO failed to pay or reimburse the MAOs, such that GEICO 'is liable for the misconduct alleged.'"); *MSP Recovery Claims, Series LLC v. Erie Indemnity Co.*, Case No. 20-75 Erie, ECF No. 51 at 18 (W.D. Pa. Mar. 22, 2021) ("Having rejected defendants' attempts to impose a heightened pleading standard, the [c]ourt finds plaintiffs have alleged facts sufficient to state a claim under the MSP Act's private right of action . . ." on the basis of nine exemplar claims).

Defendants attacked the *merits* of Plaintiff's claims by asserting that AIGPCI is a holding company that does not write policies, and that AIGPCC could not locate a policy covering L.F.'s accident-related medical costs. But the Defendants' reporting means more than they led the Court to believe. *See* § A(iii), *supra* (explaining when and why primary payers report to CMS). And the Defendants' sworn statements speak to the first element of the private cause of action—

11

their status as a primary payer—rather than Plaintiff's Article III standing. *See OneBeacon*, *supra*, ECF No. 45 at 5 ("Defendants first launch a factual attack on standing, arguing they did not violate the MSP Act . . . But this is a direct attack on the merits of the case; as injury has been alleged, the proper course is to 'find jurisdiction exists' and to treat the attack as a motion for summary judgment. As a summary judgment motion is premature, the Court denies the motion on these grounds."). The Court stayed discovery in this action pending resolution of Defendants' Motion to Dismiss, and a fact-based attack on the merits was, at minimum, premature. The Court should reserve judgment on the effect of Defendants' reporting their ongoing payment responsibility for the exemplar beneficiaries' medical expenses to CMS, as well as on the question of Defendants' primary payer status. Drawing all reasonable inferences in its favor, Plaintiff adequately alleged a right to recover conditional payments here.

The Court's review of the exemplar beneficiaries' diagnosis and treatment codes similarly implicated the merits rather than standing. The Court found *State Farm* to be instructive, but that case concerned summary judgment following some discovery. *MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2019 U.S. Dist. LEXIS 204397, *5 (C.D. Ill. Nov. 25, 2019).[8] And the same court rejected a motion to dismiss very similar to the one submitted here. *See MAO-MSO Recovery II, LLC v. State Farm Mut. Auto. Ins. Co.*, 2018 U.S. Dist. LEXIS 117356, *15-19 (C.D. Ill. July 13, 2018) (finding that the plaintiff stated an injury caused by the defendant's misconduct and further finding "[t]he Second Amended Complaint alleges that (1) State Farm is considered a primary payer; and (2) MSPA Claims 1, LLC's

---

[8] Plaintiff notes that the *State Farm* opinion makes clear that discovery was bifurcated on merits and class certification discovery. The district court, however, addressed the merits following the close of class certification discovery, and did so over the plaintiff's objection under Rule 56(d), Fed. R. Civ. P. That matter *remains* on appeal before the Seventh Circuit.

assignor paid for O.D.'s medical expenses in [the] amount of $11,060.58, but State Farm should have paid for these expenses or reimbursed the assignor for conditional payment and failed to do so. These allegations satisfy Rule 8's liberal pleading requirements.").

Plaintiff alleged that L.F. was injured in an accident on June 15, 2015. The codes provided show that L.F. was taken via ambulance to the Middlesex Hospital emergency room and received a series of treatments there, including blood work, that same day. Following the accident, L.F. received physical therapy. Plaintiff alleges that those treatments are accident-related, were paid for by its assignor, and were never reimbursed by AIGPCC – the entity that reported its primary payer status following due diligence and accepted its responsibility to pay. Plaintiff's allegations, taken as true, make their claims plausible and sufficient at this stage. *MSP Recovery Claims, Series LLC v. AIX Spec. Ins. Co.*, Case No. 6:18-cv-1456, 2019 U.S. Dist. LEXIS 86051, *8 (M.D. Fla. May 22, 2019) ("Those Plaintiffs need not prove (and the Court need not judge) the reasonableness, necessity, and relatedness of each and every medical item in the complaint, the Amended Complaint's allegations on those requirements go far beyond plausibility.").[9]

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully submits that the Court should reconsider and vacate its Order, (ECF No. 76), and the Judgment entered thereon, (ECF No. 77).

Dated: April 3, 2021                    Respectfully submitted,

                                        **ARMAS BERTRAN PIERI**
                                        4960 SW 72nd Ave, Suite 206
                                        Miami, Florida 33155
                                        Telephone: (305) 661-2021

---

[9] The same holds true for the S.C. claim, which presented two pages of accident-related treatments beyond the Warfarin prescription noted by the Court.

13

Facsimile: (305) 221-2903
E-mail: fzincone@armaslaw.com
Secondary: nmarrero@armaslaw.com

By:      */s/ Francesco A. Zincone* (admitted pro hac vice)
         Francesco A. Zincone III
         Florida Bar No. 100096

## CERTIFICATE OF SERVICE

I certify that the foregoing was filed with the Clerk this 3d day of April, 2021, using

CM/ECF, and served upon all counsel of record via email notification generated by CM/ECF.

*/s/ Francesco A. Zincone*
Francesco A. Zincone

14

## **VERIFICATION**

Pursuant to 28 U.S.C. § 1746, I verify under penalty of perjury under the laws of the

United States that the statements above regarding the preparation of Christopher Miranda's

declaration are true and correct.

Francesco A. Zincone III

15