USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 8/2/2021

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------X

MSP RECOVERY CLAIMS, SERIES LLC, a       :
Delaware entity,
                                         :
                                         :
                      Plaintiff,         :
                                         :            20-CV-2102 (VEC)
         -against-                       :
                                         :            OPINION AND ORDER
AIG PROPERTY CASUALTY COMPANY, a         :
New York for-profit corporation, AIG PROPERTY :
CASUALTY, INC., a Delaware corporation, and :
LEXINGTON INSURANCE COMPANY, a           :
Delaware company,                        :
                                         :
                      Defendants.        :
------------------------------------------------------------X

VALERIE CAPRONI, United States District Judge:

In this putative class action, MSP Recovery Claims Series, LLC sued AIG Property

Casualty Company ("AIGPCC"), AIG Property Casualty Inc. ("AIGPCI"), and Lexington

Insurance Company ("Lexington") to recover damages pursuant to the Medicare Secondary

Payer Act, 42 U.S.C. § 1395y ("MSP Act").  On March 26, 2021, the Court dismissed this case

for lack of subject-matter jurisdiction because Plaintiff had not adequately alleged that it has

standing to bring the lawsuit.  *MSP Recovery Claims, Series LLC v. AIG Prop. Cas. Co.*, No. 20-

CV-2102, 2021 WL 1164091 (S.D.N.Y. Mar. 26, 2021).  On April 3, 2021, Plaintiff filed a

motion for reconsideration.  Notice of Mot., Dkt. 78.  For the reasons discussed below, Plaintiff's

motion for reconsideration is DENIED.

## BACKGROUND

The Court assumes familiarity with this litigation and the underlying decision that

Plaintiff has moved the Court to reconsider.  *See generally MSP Recovery Claims, Series LLC*,

2021 WL 1164091.  The Court will provide a brief overview of the background information
pertinent to this motion.

In this case, Plaintiff sought to recover damages pursuant to the MSP Act.  *See* 42 U.S.C.
§ 1395y.  Plaintiff alleged that it has standing to bring claims for reimbursement of expenditures
made to provide medical care to three groups: (i) five "exemplar" patients, L.F., J.M., S.A., S.C.,
and J.F.; (ii) a longer list of claims associated with insureds listed on an exhibit attached to the
First Amended Complaint ("FAC"); and (iii) a "greater universe" of people who received
medical care from Plaintiff's assignors for which Defendants have a reimbursement obligation.
FAC, Dkt. 55 ¶¶ 28, 31, 50–99.  Plaintiff provided the most detail about the five exemplar
patients.  *Compare* FAC ¶¶ 50–99 (describing the exemplar patients) *with* FAC Ex. A (listing
claims on a spreadsheet) *and* FAC ¶ 31 (mentioning a "greater universe" of claims).  The Court
found that Plaintiff lacks standing as to the claims associated with each of the three groups.  *MSP
Recovery Claims, Series LLC*, 2021 WL 1164091, at *14.  In its motion for reconsideration,
Plaintiff asks the Court to reconsider its decision solely with respect to the claims for
reimbursement for medical care provided to the five exemplar patients.  Mem. of Law, Dkt. 79 at
2–10.

In its decision, the Court made findings that applied generally to the allegations in the
FAC regarding the group of five exemplar patients as well as additional findings that applied to
the allegations in the FAC that related only to particular patients.  The Court found that Plaintiff
lacked standing with respect to the five exemplar patients because it had not adequately alleged:
(1) that its affiliated entities' assignors (the medical providers that treated the patients) had
incurred reimbursable costs in connection with each patient, an indispensable component of
injury-in-fact, *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *6–7; and (2) that the
medical care provided to the exemplar patients implicated insurance policies written by a

Defendant, an indispensable component of causation, *id.* at \*12–14.  With respect to particular exemplar patients, the Court found that Plaintiff had not adequately pled: (1) that the claims for reimbursement for medical care provided to three of the five patients had been assigned or fully assigned to a Plaintiff-affiliated entity, *id.* at \*7–10; and (2) that the insurance policies at issue with respect to four of the five patients had been issued by a Defendant, *id.* at \*11–12.  Plaintiff urges the Court to reconsider each of these findings.  *See generally* Mem. of Law, Dkt. 79 at 2–10.  Plaintiff further asks the Court to reconsider its decision declining to grant it leave to amend the complaint for a second time.  *Id.* at 4–5.  Defendants oppose the motion.  Resp., Dkt. 80.

## LEGAL STANDARD

A party may obtain relief on a motion for reconsideration "only when the [party] identifies an intervening change of controlling law, the availability of new evidence, or the need to correct a clear error or prevent manifest injustice."  *Kolel Beth Yechiel Mechil of Tartikov, Inc. v. YLL Irrevocable Tr.*, 729 F.3d 99, 104 (2d Cir. 2013) (quotation omitted).  "The standard for granting [a motion for reconsideration] is strict, and reconsideration will generally be denied unless the moving party can point to controlling decisions or data that the court overlooked — matters, in other words, that might reasonably be expected to alter the conclusion reached by the court."  *Shrader v. CSX Transp., Inc.*, 70 F.3d 255, 257 (2d Cir. 1995).  "It is well-settled that [a motion for reconsideration] is not a vehicle for relitigating old issues, presenting the case under new theories, securing a rehearing on the merits, or otherwise taking a 'second bite at the apple' . . . ." *Analytical Survs., Inc. v. Tonga Partners, L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (quoting *Sequa Corp. v. GBJ Corp.*, 156 F.3d 136, 144 (2d Cir. 1998)).

**DISCUSSION**

I.      **The Court Will Not Reconsider Its Decision that Plaintiff Did Not Adequately Allege that Its Affiliated Entities' Assignors Incurred Reimbursable Costs Associated with Medical Care Provided to the Exemplar Patients**

To have pled adequately injury-in-fact, Plaintiff needed to allege that its assignors "incurred reimbursable costs and were not reimbursed." *See MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *6.[1]  In its opposition to the motion to dismiss, Plaintiff argued that the claims at issue were all reported by a Defendant to the Center for Medicare & Medicaid Services ("CMS") and that such reporting constituted an admission by the Defendant that it is legally obligated to reimburse costs associated with the reported claims.  FAC ¶ 28.  The Court rejected that argument, holding that "Plaintiff's underlying premise — if a claim is reported to CMS, then any medical expense that may be associated with the claim is reimbursable by the entity that reported the claim — is factually inaccurate." *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *6.  In reaching its conclusion, the Court was persuaded by Defendants' statutory analysis and the several examples they provided of reported claims that generated expenses that were not reimbursable by the entity that reported the claim.  *Id.* (citing MTD Mem. of Law, Dkt. 66 at 22 n.31).

In briefing the motion to dismiss, Plaintiff did not respond to that aspect of Defendants' arguments; instead, it simply reiterated its position that CMS reporting constitutes an admission of payment responsibility.  MTD Resp., Dkt. 70 at 3, 10, 23.  The Court concluded that "[w]ithout any response to Defendants' contention that CMS reporting does not do the work Plaintiff alleges, the Court has nothing on which to base a decision that it can draw reasonable inferences from the bare fact that the claim was reported." *MSP Recovery Claims, Series LLC*,

---

[1]      Plaintiff acknowledged that in order to plead injury-in-fact, it had to allege that its assignors "incurred reasonable costs and were not reimbursed." *See* MTD Resp., Dkt. 70 at 4 (internal citation omitted).

2021 WL 1164091, at *7 n.13.  Accordingly, the Court found that although many of the claims

reported to CMS may involve accidents as to which the reporting insurance company owes

reimbursement, "Plaintiff has not adequately alleged that that there is 'more than a sheer

possibility,' that its exemplar claims fall into that category."  *Id.* at *7 (citing *Ashcroft v. Iqbal*,

556 U.S. 662, 678 (2009)).

In its motion for reconsideration, Plaintiff stands by its underlying premise that

"Defendants' [CMS] reporting is an admission of primary payer responsibility for the conditional

payments at issue."  Mem. of Law, Dkt. 79 at 8; *see also* Reply, Dkt. 81 at 5.  Plaintiff argues

that "Defendants invited the Court to error" with its statutory analysis,[2] which it claims

improperly led the Court to conclude that CMS reporting is "meaningless."  Mem. of Law, Dkt.

79 at 6.  In its memorandum in support of its motion for reconsideration, Plaintiff conducted a

detailed statutory analysis of the MSP Act, the Medicare Secondary Payer Act Manual,[3] and

CMS policy guidance.  *Id.* at 6–8; Reply, Dkt. 81 at 4.

All of Plaintiff's statutory and regulatory analysis submitted to support its position

regarding the significance of CMS reporting is new.  Upon careful review of Plaintiffs' brief in

opposition to Defendants' motion to dismiss, the Court finds that Plaintiff did not make or even

reference the detailed statutory and regulatory arguments made for the first time in its motion for

---

[2]       In its memorandum of law in support of its motion for reconsideration, Plaintiff failed to address the
examples Defendants had provided — and the Court had cited in its opinion — of claims that had been reported to
CMS but were not reimbursable by the company that reported the claim.  *See MSP Recovery Claims, Series LLC v.
AIG Prop. Cas. Co.*, No. 20-CV-2102, 2021 WL 1164091, at *6 (S.D.N.Y. Mar. 26, 2021) (citing MTD Mem. of
Law, Dkt. 66 at 22 n.31).  Plaintiff finally addressed those examples in its reply brief in support of its motion for
reconsideration.  Reply, Dkt. 81 at 5.  The Court declines to consider Plaintiff's discussion of the examples: first,
motions for reconsideration are "not a vehicle for relitigating old issues," *Analytical Survs., Inc. v. Tonga Partners,
L.P.*, 684 F.3d 36, 52 (2d Cir. 2012) (internal citation omitted); and second, "[i]t is well settled in the Second Circuit
that a party may not raise an argument for the first time in his reply brief," *Anghel v. Sebelius*, 912 F. Supp. 2d 4, 14
(E.D.N.Y. 2012) (internal citation omitted) (collecting cases).

[3]       Plaintiff attached a 197-page excerpt from the manual as an exhibit to its memorandum of law in support of
its motion for reconsideration.  *See* Manual, Dkt. 79-4.

reconsideration.  In Plaintiff's reply brief in support of its motion for reconsideration, it claimed

to "redirect[] the Court to clear, relevant statutory language . . . cited in prior briefing," *see*

Reply, Dkt. 81 at 3, but Plaintiff did not include any citations to the brief it filed in opposition to

the motion to dismiss to show that those arguments had been previously made to the Court.  In

fact, in the underlying opinion being challenged, the Court noted repeatedly that Plaintiff had

failed to respond to Defendants' arguments on this crucial point.[4]  Motions for reconsideration

are "not a vehicle for relitigating old issues, presenting the case under new theories, securing a

rehearing on the merits, or otherwise taking a 'second bite at the apple.'"  *Analytical Survs., Inc.*,

684 F.3d 36, 52 (2d Cir. 2012).[5]  Because Plaintiff chose not to make its statutory and regulatory

arguments in its opposition to Defendants' motion to dismiss, the Court will not consider them

here.[6]

      In its motion for reconsideration, Plaintiff cites two Eleventh Circuit cases that it

contends supports its view that CMS reporting constitutes an admission that the reporting

company is responsible to reimburse costs associated with the claims reported.  *See* Mem. of

Law, Dkt. 79 at 6–7 (citing *MSP Recovery Claims, Series LLC v. Ace Am. Ins. Co.*, 974 F.3d

1305, 1319 (11th Cir. 2020); *MSPA Claims 1, LLC v. Kingsway Amigo Ins. Co.*, 950 F.3d 764,

---

[4]    *See MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *6 ("Plaintiff fails to address this point in its response brief"); *id.* at *7 (there are "no allegations on the subject by Plaintiff"); *id.* (the Court is left "[w]ithout any information from Plaintiff about what can be discerned from CMS data"); *id.* "[w]ithout any factual support for the conclusion that the costs at issue were related to the accidents and should have been reimbursed but were not . . . "); *id.* at *7 n.12 ("[w]ith no information from Plaintiff on the issue"); *id.* at *7 n.13 ("[w]ithout any response to Defendants' contention that CMS reporting does not do the work Plaintiff alleges").

[5]    Plaintiff acknowledges that the Court is limited to considering arguments that were previously made to the Court.  *See* Mem. of Law, Dkt. 79 at 1 (internal citation omitted) (noting that "a motion for reconsideration allows a party to direct the court to an argument the party has previously raised but the Court did not consider").

[6]    Defendants contest the merits of Plaintiff's newly-proffered analysis, arguing that "[w]hile it is correct that primary payers must report to CMS each time there is a 'settlement, judgment, award, or other payment,' regardless of whether they admit to liability in the underlying matter, that does not mean any report to CMS represents an admission of primary payer responsibility."  Resp., Dkt. 80 at 12.  Because Plaintiff did not raise its arguments as part of its opposition to the motion to dismiss, the Court declines to consider the merits of each sides' arguments as to the proper significance of CMS reporting.

774–75 (11th Cir. 2020)).  Plaintiff cited both cases in its opposition to Defendants' motion to dismiss.  *See* MTD Resp., Dkt. 70 at iv, v (listing the page numbers each case is cited).

This Court expressly declined to follow the holding of *ACE*.  The opinion acknowledged that, in *ACE*, the Eleventh Circuit noted that insurance companies' reports to CMS were evidence "that they owed primary payments, including the primary payments for which Plaintiffs seek reimbursement."  *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *6 n.11 (citing *ACE*, 974 F.2d at 1319).  This Court declined to follow that holding because the Eleventh Circuit neither acknowledged nor addressed the argument Defendants made in this case that "'primary payers must report to CMS regardless of whether there was a conditional payment and regardless of whether or not there is an admission or determination of responsibility.'"  *Id.*  Moreover, the Eleventh Circuit was evaluating a different legal question, namely whether the plaintiffs in that matter had complied with alleged pre-suit notice requirements.  *Id.*  In its motion for reconsideration, Plaintiff does not explain what the Court overlooked in declining to apply a decision from a court that did not have the same arguments before it.[7]  A motion for reconsideration is not a vehicle to relitigate rejected arguments or to raise arguments that the party strategically chose not to make earlier.

The other Eleventh Circuit case on which Plaintiff relies, *Kingsway*, is inapplicable to the question of the significance of CMS reporting.  In its motion for reconsideration, Plaintiff cites to

---

[7]    Plaintiff asserts in its motion for reconsideration that the Eleventh Circuit reached its conclusion in *ACE* about CMS reporting "with the benefit of the Department of Health and Human Services' direct guidance."  Mem. of Law, Dkt. 79 at 6.  The Court assumes that Plaintiff is referring to the amicus brief filed by the Department of Health and Human Services in that case; Plaintiff attached a copy of the amicus brief to its opposition to Defendants' motion to dismiss.  *See* HHS Amicus Brief, Dkt. 70-5.  Before deciding the motion to dismiss, the Court reviewed that amicus brief and found it to be wholly unhelpful on the question of the significance of CMS reporting.  The brief discusses which entities may assert the private right of action provided in the MSP Act, and it does not mention, let alone discuss, whether CMS reporting constitutes an admission of liability.  *Id.*  Accordingly, the Court is at a loss to understand Plaintiff's assertion that the Eleventh Circuit reached its conclusion about the significance of CMS reporting with "direct guidance" from HHS.

a portion of the *Kingsway* decision that was not discussed in its response to the motion to dismiss. *Compare* Mem. of Law, Dkt. 79 at 7 (citing *Kingsway*, 950 F.3d at 774–75) *with* MTD Resp., Dkt. 70 at 2, 11, 24 (citing *Kingsway*, 950 F.3d at 772, 775). Although that may be reason enough not to consider Plaintiff's argument, the Court notes that the passage from *Kingsway* quoted in Plaintiff's motion for reconsideration says nothing about whether a report to CMS constitutes an admission that the reporting entity is legally responsible for costs incurred in connection with the reported incident. *Kingsway* involved a claim for reimbursement for medical care provided to a Medicare beneficiary arising from an automobile accident. Kingsway, as the insurer of the other party involved in the accident, had settled the Medicare recipient's personal injury claim against its insured, thereby acknowledging its obligation as the primary payer for the Medicare beneficiary's medical expenses. *Kingsway*, 950 F.3d at 768, 772. There was, therefore, no issue of the significance *vel non* of a report to CMS in that case.

The portion of the *Kingsway* decision quoted in Plaintiff's motion for reconsideration interprets the MSP Act's claims-filing provision, which is not at issue in this case. Mem. of Law, Dkt. 79 at 7 (citing *Kingsway*, 950 F.3d at 774–75). In the context of that provision, the Eleventh Circuit rejected the insurance company's contention that the health care provider must make a request for reimbursement within three years of when services are provided as a precondition to filing a claim pursuant to the MSP Act. *Kingsway*, 950 F.3d at 774–75. That analysis has nothing to do with actions insurance companies must take, let alone the circumstances under which insurance companies must report claims to CMS or the legal significance of such reporting. Without any connection between the Eleventh Circuit's holding in *Kingsway* and the decision Plaintiff is asking this Court to reconsider, *Kingsway* does not warrant a modification to the Court's decision.

In short, the Court declines to reconsider its decision that Plaintiff failed to allege adequately that Defendants are legally responsible to reimburse all medical costs associated with any claim they reported to CMS.  Accordingly, the Court stands by its holding that Plaintiff failed to allege that it has standing as to the five exemplar patients because it did not plead adequately that its assignors were injured by Defendants.

**II.     The Court Will Not Reconsider Its Holding that Plaintiff Did Not Adequately Allege that the Exemplar Patients' Injuries Implicated Insurance Policies Written by Defendants**

The Court also found that Plaintiff failed to allege that it has standing because it had not adequately pled that Defendants caused Plaintiff's injuries.  Specifically, the Court found that "[w]ithout at least some allegations about the nature of the accidents, there is nothing beyond Plaintiff's *ipse dixit* and the fact that the medical care was provided on the date of or subsequent to the date of the accident that links the alleged insurance policies or settlement agreements to the medical items and services provided."  *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *12.  To illustrate this problem, the Court reviewed some of the listed diagnostic codes to show that it was pure speculation that the medical care provided was necessitated by the alleged accident.  *Id.* at *13.  In its motion for reconsideration, Plaintiff argues that those findings "implicated the merits rather than standing."  Mem. of Law, Dkt. 79 at 12.

To allege standing, Plaintiff must plead a causal connection between the injury and the conduct complained of such that the injury is fairly traceable to the challenged action of the defendant.  *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560, (1992).  Without "basic allegations regarding how the exemplar patient[s] [were] injured and regarding the nature of medical care provided," *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *13, the Court has no way to determine whether Plaintiff's injury is fairly traceable to the Defendants' actions.  With no further explanation why this gap in Plaintiff's pleading is a merits issue instead of a standing

issue,[8] the Court declines to reconsider its holding that Plaintiff did not adequately allege that the expenses associated with the medical care of the exemplar patients implicate Defendants' insurance policies.

### III. The Court Will Not Reconsider Its Findings that Plaintiff Did Not Adequately Allege that the Claims Associated with Medical Care Provided to Three of the Exemplar Patients Have Been Assigned to It

Although the Court concluded that Plaintiff failed to allege injury-in-fact and causation as to all of the exemplar patients, the Court also noted that, independent of the failure to allege standing as to the exemplar patients as a group, Plaintiff had also failed to allege standing as to unreimbursed medical care provided to particular exemplar patients.[9]  With respect to S.A. and J.F., the Court found that "50% of claims related to S.A.'s medical care and 78% of claims related to J.F.'s medical care were not assigned to a [Plaintiff-affiliated entity] because, according to Plaintiff's own data, that medical care occurred outside the time period covered by the respective assignment agreements."  *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *10.  In its motion for reconsideration, Plaintiff recognizes that some of the care provided occurred outside the time periods delineated in the assignment agreements but argues that the untimely claims were, nevertheless, assigned because both assignments include claims "related to" services rendered during the delineated time periods.  Mem. of Law, Dkt. 79 at 9–10.

---

[8]      Plaintiff also highlights that the Court cited a summary judgment opinion to support its finding that Plaintiff's reliance solely on chronology was insufficient to link the costs of medical care for the exemplar patients to the Defendants' insurance policies or settlement agreements.  Mem. of Law, Dkt. 79 at 12.  But the Court expressly acknowledged that the cited case was in a summary judgment posture.  *See MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *13 ("While the standard of review at summary judgment is obviously more stringent than at the motion to dismiss stage, Plaintiff is still obligated to allege sufficient facts to nudge its claims into the realm of possible and out of the realm of pure speculation.").  The Court considered its procedural posture before relying on the decision; accordingly, Plaintiff's argument does not constitute a reason to reconsider its holding.

[9]      The Court need not consider the balance of Plaintiff's arguments for reconsideration because the Court's decision not to reconsider its holdings that apply to all of the exemplar patients renders irrelevant arguments addressed to only some of the exemplar patients.  Nevertheless, the Court will consider Plaintiff's additional arguments.

Plaintiff may be right that all of S.A. and J.F.'s claims were assigned to entities affiliated with Plaintiff either because they fell within the temporal limitations of the assignment agreements or because they were related to claims that did.  But this is an argument that should have been made in its opposition to the motion to dismiss, not raised for the first time in a motion for reconsideration.  Plaintiff knew this was an issue: Defendants argued that S.A. and J.F.'s claims in part fell outside of the temporal limits of the assignment from the entity that provided them medical care.  MTD Mem. of Law, Dkt. 66 at 10–11.  Plaintiff chose not to respond to Defendants' argument.  Because a motion for reconsideration is not a vehicle for litigating issues a party chose not to contest previously, the Court declines to reconsider its decision on that basis.

In its underlying opinion, the Court further found that Plaintiff had failed to allege adequately that costs associated with S.A. and J.M.'s care were not subject to carveouts in the relevant assignment agreements.  With respect to S.A., the Court found that "the specific carveout in [the relevant] assignment agreements — it excludes claims relating to the GlaxoSmithKline manufacturing facility in Cidra, Puerto Rico . . . — is not mentioned anywhere in the data analyst's declaration or in Plaintiff's other filings."  *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *9.  In its motion for reconsideration, Plaintiff argues that the claim related to S.A.'s medical care, "on its face, has nothing to do with the 'GSK Cidra matter' in Cidra, Puerto Rico, which, from a simple Google search, has nothing to do with recoveries under the Medicare Secondary Payer Act (but rather payments made for adulterated and contaminated pharmaceutical drugs.)."  Mem. of Law, Dkt. 79 at 10.  But the Court has no idea what kind of accidents allegedly led to S.A.'s or any of the other exemplar patients' injuries.  *See MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *5 n.5 ("Plaintiff alleges that each exemplar patient was injured 'in an accident' but never alleges what type of accident (e.g., automobile, slip-and-fall, bicycle, hunting, skiing).").  Moreover, when considering a motion to dismiss, the

Court is limited to the allegations in the operative complaint and cannot consider what can be found from "a simple Google search." *See Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 56 (2d Cir. 2016) (finding that on a facial Rule 12(b)(1) motion to dismiss for lack of standing, "[t]he task of the district court is to determine whether the Pleading alleges facts that affirmatively and plausibly suggest that the plaintiff has standing to sue") (cleaned up). Accordingly, the Court adheres to its decision that Plaintiff did not adequately allege that claims related to S.A.'s medical care were assigned to its affiliated entity.

With respect to J.M., the Court held that Plaintiff had not adequately alleged that claims related to his or her medical care were not within the carveouts contained in the relevant assignment agreement. The Court first found that because Plaintiff's expert had mixed up which exemplar patient was associated with which assignment, the Court had "no way of knowing whether Plaintiff compared claims related to J.M. or L.F. to the carveout lists" and, accordingly, was "unable to draw a reasonable inference that J.M.'s claims were not excluded from the assignment at issue." *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *9. In its motion for reconsideration, Plaintiff argues that the Court should consider the expert's corrected declaration that properly links exemplar patients with the assignment agreement related to claims associated with those patients. Mem. of Law, Dkt. 79 at 10. The Court agrees with Defendants that "[a] motion for reconsideration is not a vehicle for correcting a party's errors, but rather to correct mistakes made by a court in the underlying decision." Resp., Dkt. 80 at 5 (citing *Levin v. Gallery 63 Antiques Corp.*, No. 04-CV-1504, 2007 WL 1288641, at *2 (S.D.N.Y. Apr. 30, 2007)); *see also Koehler v. Bank of Berm. Ltd.*, No. M18-302, 2005 WL 1119371, at *1 (S.D.N.Y. May 10, 2005) (finding that a party's inadvertent omission of materials was not a proper basis for a motion for reconsideration). Accordingly, the Court will not  modify its

original decision that Plaintiff did not adequately allege that claims related to J.M.'s care fell

within the scope of the assignment agreements.[10]

IV.     **The Court Will Not Reconsider Its Decision that Plaintiff Did Not Adequately Allege that Defendants Issued the Insurance Policies that Allegedly Create Primary Liability for Costs Associated with Four of the Exemplar Patients**

Plaintiff alleged that AIGPCC or AIGPCI issued insurance policies pursuant to which

AIGPCC and AIGPCI have primary responsibility for medical expenses associated with four of

the exemplar patients.  FAC ¶¶ 51, 61, 71, 81.  In support of its motion to dismiss, Defendants

submitted declarations by two AIG employees; the declarations stated that AIGPCI is a holding

company that does not issue insurance policies and that there was no indication in AIGPCC's

files that it issued an insurance policy that covered the exemplar patient as alleged in the FAC.

*See* Garces Decl., Dkt. 68 ¶¶ 2, 4; Bogard Decl., Dkt. 67 ¶ 6a.  The Court concluded that

"[w]ithout any evidence to controvert Defendants' declarations and to link AIGPCI and AIGPCC

to the accidents that purportedly give rise to a reimbursement obligation, Plaintiff has not

adequately pled causation, precluding it from having standing over the exemplary claims

associated with medical care provided to [the four patients]."  *MSP Recovery Claims, Series

LLC*, 2021 WL 1164091, at *12.

In its motion for reconsideration, Plaintiff argues that "Defendants attacked the *merits* of

Plaintiff's claims by asserting that AIGPCI is a holding company that does not write policies,

and that AIGPCC could not locate [the relevant policy.]"  Mem. of Law, Dkt. 79 at 11.

---

[10]     Plaintiff further argues that the Court should have ignored the mistakes in the expert's declaration because "*unsworn* allegations of the same facts [are] sufficient at the pleading stage."  Mem. of Law, Dkt. 79 at 5 (emphasis in original).  But "[t]he Court need not accept as true any allegations that are contradicted by documents deemed to be part of the complaint . . . ."  *In re Yukos Oil Co. Sec. Litig.*, No. 04-CV-5243, 2006 WL 3026024, at *12 (S.D.N.Y. Oct. 25, 2006).  Because the expert declaration that Plaintiff chose to include contradicted the facts alleged in the FAC, the Court declines to reconsider whether the facts alleged in the FAC trump contrary facts sworn to in a declaration on which Plaintiff relied and are sufficient on their own to allege adequately that claims associated with the exemplar patients were not subject to any of the carveouts in the assignment agreements.

13

Defendants argue that the affidavits "speak to the first element of the private cause of action —
their status as a primary payer — rather than Plaintiff's Article III standing." *Id.* at 11–12.  But
whether Defendants are a primary payer is a separate legal question from whether Plaintiff has
adequately alleged causation.  As the Court explained in the opinion, to satisfy the causation
element of standing, Plaintiff needed to "allege facts adequate to show that the alleged injury
resulted from the actions of the defendant and 'not . . . from the independent action of some third
party.'"  *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *11 (quoting *MGM Resorts
Int'l Glob. Gaming Dev., LLC v. Malloy*, 861 F.3d 40, 44 (2d Cir. 2017)).  Beyond repeating its
contention that the CMS reporting is definitive proof that Defendants are responsible for the
incurred costs, Plaintiff failed to rebut the evidence provided by Defendants that AIGPCC and
AIGPCI were simply not involved with four of the five exemplar patients.[11]  Accordingly, the
Court will not reconsider its finding that Plaintiff failed to plead adequately that Defendants
caused the alleged injuries to Plaintiff associated with four of the five exemplar patients.

V.       **The Court Will Not Reconsider Its Denial of Leave to Amend the Complaint**

Plaintiff argues that its expert affidavit contained "unintentional scrivener's errors" that
"prevented the Court's full consideration of the evidence in opposition to the Defendants' factual
standing attack."  Mem. of Law, Dkt. 79 at 2.  Plaintiff further argues that courts generally
address scrivener's errors by permitting amendment.  *See id.* at 4–5 (collecting cases where
courts allowed plaintiffs to amend their complaints to correct scrivener's errors).  The Court
construes Plaintiff's argument to be a request to reconsider its decision to deny Plaintiff leave to

---

[11]       On this as well as on the question of factual allegations connecting the medical care provided to the
insurance policy at issue, *see* discussion at p. 9–10, *supra*, the Court remains baffled as to why Plaintiff failed to
obtain additional information about the accidents and insurance policies at issue, especially given the cooperation
requirements contained in each of the assignment agreements.  *See MSP Recovery Claims, Series LLC*, 2021 WL
1164091, at *12 n.24.

amend its complaint[12] so that Plaintiff could file its corrected expert declaration as an attachment to the amended complaint.[13]

The Court will not reconsider its order denying Plaintiff leave to amend the complaint. The error-filled expert declaration was not material to the Court's finding that Plaintiff lacked standing as to the five exemplar patients.  As already explained, the Court found that Plaintiff did not adequately allege that its assignors incurred reimbursable costs (going to injury-in-fact) and that the exemplar patients' injuries implicated insurance policies written by Defendants (going to causation).  Neither of those findings, which apply to all of the exemplar patients, were a function of the errors in the expert's declaration.  *See Advanced Magnetics, Inc. v. Bayfront Partners, Inc.,* 106 F.3d 11, 18 (2d Cir. 1997) ("Leave to amend need not be granted . . . where the proposed amendment would be futile.") (cleaned up).  Because the Court would not modify its holding that Plaintiff lacked standing even with the benefit of a corrected expert declaration, the Court will not reconsider its order denying Plaintiff leave to amend the Complaint.[14]

---

[12] The expert affidavit was originally attached as an exhibit to Plaintiff's opposition to Defendants' motion to dismiss; it was not attached to the operative complaint.  *See* Miranda Decl., Dkt. 70-1.  Plaintiff's motion for reconsideration implies that it would like the opportunity to file a corrected declaration without the scrivener's errors.  *See* Corrected Miranda Decl., Dkt. 79-1.  Because the only way to do that would be to file the corrected declaration as an exhibit to a second amended complaint, the Court construes Plaintiff's argument to be a request to reconsider its order denying leave to amend the complaint.

[13] To the extent that Plaintiff is arguing that the scrivener's errors are a basis on their own for the Court to reconsider its decision that Plaintiff failed to allege that it had standing, that request is denied.  A motion for reconsideration "is not a vehicle for correcting counsel's own . . . missteps."  *Barger v. First Data Corp.*, No. 17-CV-4869, 2020 WL 5549083, at *2 (E.D.N.Y. Sept. 16, 2020), *aff'd*, 851 F. App'x 278 (2d Cir. 2021).  *See also Levin v. Gallery 63 Antiques Corp.*, No. 04-CV-1504, 2007 WL 1288641, at *2 (S.D.N.Y. Apr. 30, 2007) ("It is clear that the sole function of a proper motion for reconsideration is to call to the Court's attention dispositive facts or controlling authority that were plainly presented in the prior proceedings but were somehow overlooked in the Court's decision; in other words, an obvious and glaring mistake.  Motions for reconsideration allow the district court to correct its own mistakes, not those of the Parties.") (cleaned up).

[14] Plaintiff also complains that the Court's opinion has "caused a feeding frenzy among the defense bar."  Mem. of Law, Dkt. 79 at 3 n.4.  With its dozens of other cases in mind, Plaintiff noted that it was "compelled to explain to this Court how the scrivener's error came to be, and why that error has nothing to do with the competence of Mr. Miranda."  *Id.*  While the Court regrets that its opinion has caused a stir, the fact that this Court's opinion may have repercussions on the perception of Mr. Miranda's competence in Plaintiff's other cases is simply not a reason for the Court to allow Plaintiff to file yet another amended complaint.

The Court also questions whether the mistakes identified in the expert declaration were, in fact, "scrivener's errors."  As Plaintiff explains, a scrivener's error "is defined as a 'clerical error,' which is '[a] error resulting from a minor mistake or inadvertence, especially in writing or copying something.'"  Mem. of Law, Dkt. 79 at 2 n.1 (citing Black's Law Dictionary (8th Ed. 2004)).  Examples of scrivener's errors include omitting an appendix, typing an incorrect number, and mis-transcribing a word.  *Id.*  One of the mistakes highlighted by the Court that Plaintiff wants to excuse as a scrivener's error was an apparent mix up by the expert of the assignments associated with L.F. and J.M., two of the exemplar patients.  *Compare* FAC ¶¶ 50, 60 *with* Miranda Decl., Dkt. 70-1 ¶¶ 20, 21.  On its face, this appears to be an inadvertent transposition, which would appear to qualify as a scrivener's error.  But the error seems like a product of Plaintiff's strategic decisions rather than an innocent mistake.  As the Court explained in the opinion, the spreadsheets associated with the exemplar patients did not include the name or initials of the exemplar patient or the name of the assigning entity.  *MSP Recovery Claims, Series LLC*, 2021 WL 1164091, at *5.  This problem had been identified by at least one other court *before* Plaintiff filed its complaint in this action.  *See id.* at *5 (citing *MSP Recovery Claims, Series LLC v. New York Cent. Mut. Fire Ins. Co.*, No. 19-CV-211, 2019 WL 4222654, at *5 (N.D.N.Y. Sept. 5, 2019) (finding it problematic that "nothing on the actual exhibit confirms its source")).  Inasmuch as the absence of  identifying information had been previously identified as a problem, this Court can only view Plaintiff's decision to continue the practice of omitting any identifying information from the spreadsheets as a strategic decision.  That decision was Plaintiff's to make, but it made it highly likely, if not inevitable, that the exemplar patients would

get mixed up.  Accordingly, the Court is reluctant to characterize this mistake as a scrivener's error.[15]

In short, because the expert's declaration was not material to the Court's holding that Plaintiff did not adequately allege standing and because the Court questions whether all of the mistakes were in fact scrivener's errors, the Court will not reconsider its order denying Plaintiff further leave to amend its complaint.

## CONCLUSION

For the reasons discussed above, Plaintiff's motion for reconsideration is DENIED.

The Clerk of Court is respectfully directed to terminate the open motion at docket entry 78.

**SO ORDERED.**

**Date:  August 2, 2021**
**New York, New York**

**VALERIE CAPRONI**
**United States District Judge**

---

[15]     Similarly, the Court questions whether the expert made a scrivener's error with respect to the timing of the payments made for medical services and items associated with J.F.'s injuries.  The expert asserted that the assignors paid for J.F.'s medical care starting on September 15, 2017.  *See* Miranda Decl., Dkt. 70-1 ¶ 23.  But a closer look at the associated exhibit reveals that six payments were made on September 6, 2017.  *See* FAC Ex. J, Dkt. 55-10.  The Court presumes that the expert asserted that the first payment was made on September 15, 2017 because that is the date that appears on the first row of data on the exhibit.  It appears that the expert failed to read the rest of the data and simply assumed that the medical item on the first row would have the earliest payment date.

Reaching a conclusion after failing to review thoroughly the available data is an example of lack of attention to detail; it is not an example of "typing an incorrect number."  *See* Mem. of Law, Dkt. 79 at 2 n.1. Accordingly, the Court would also not characterize this mistake as a scrivener's error.